IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | |
|---|---|
| **McComb Children's Clinic, LTD.**, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 5:24-cv-00048-LG-ASH |
| | ) |
| **Xavier Becerra**, et al., | ) |
| | ) |
| *Defendants.* | ) |

**PLAINTIFF'S REBUTTAL IN SUPPORT OF ITS MOTION FOR A
DELAY OF EFFECTIVE DATE AND FOR PRELIMINARY INJUNCTION**

Defendants' opposition brief is wrong in three ways, as the final Rule mandates gender transitions, MCC is injured, and injunctive relief is available.

**ARGUMENT**

**I.   The Rule illegally mandates gender transition actions and speech and exceeds HHS's authority.**

**A.   The Rule mandates gender transitions.**

Defendant United States Department of Health and Human Services ("HHS") tries to deny that its Rule mandates gender transition actions and speech. This contradicts the plain text of the Rule. HHS makes it illegal to:

> *Deny or limit health services sought for purpose of gender transition or other gender-affirming care* that the covered entity would provide to an individual for other purposes if the denial or limitation is based on an individual's sex assigned at birth, gender identity, or gender otherwise recorded.

Nondiscrimination in Health Programs and Activities, 89 FR 37522, 37701 (May 6, 2024) (to be codified at § 92.206(b)(4)) (emphasis added) (hereinafter § 92.206). Likewise, it is illegal to:

1

> Have or implement a categorical coverage exclusion or limitation for all health services related to gender transition or other gender-affirming care[.]

*Id.* (to be codified at § 92.207(b)(4)) (emphasis added) (hereinafter § 92.207). These simple statements mean that MCC, by being willing to provide services and referrals for medical reasons, must provide the same services or referrals "for [the] purpose of gender transition or other gender-affirming care." § 92.206(b)(4)).

So how can HHS claim the Rule does not "require the provision of any particular health service"? Opposition Brief [ECF 18] at 6 ("Opp."). Because in the hundreds of pages of preamble explanation—and in its brief here—HHS tries to put a spin on the mandate to dampen opposition, without withdrawing the mandate itself. It does so by a two-part formula: first, deny what the mandate says; then, caveat that denial with bureaucratic lingo that reimposes the denied mandate.

Take this statement: "this final rule does not require coverage of a particular health service; rather, it requires that the coverage being offered must be provided in a neutral and nondiscriminatory manner." 89 FR at 37614. This dualistic statement means a clinic need not offer a hormone or surgery, but if it does, it must offer it for gender transition purposes. So the Rule *does* require clinics to offer gender transition medical actions. Yet HHS claims that mandate "does not require coverage of a particular health service." Likewise, the Rule says, "[n]othing in this section requires the provision of any health service where the covered entity has a legitimate, nondiscriminatory reason." § 92.206(c). Here the second clause swallows the first, because in the Rule a "reason" is *not* "nondiscriminatory" if a clinic provides a service "for other purposes" but will not provide it for a gender transition. § 92.206(b)(4).

HHS propounds the same two-sided view about programs and facilities. It claims the Rule does not "'prohibit[ ] a covered entity from operating sex separated programs and facilities.'" Opp. at 12 (quoting 89 FR at 37593). But again HHS leaves

out the second half of its contradictory couplet: "A covered entity must not deny a nonbinary individual access to a health program or facility on the basis that the program or facility separates patients based on sex or offers separate male and female programs or facilities." 89 FR at 37593. So MCC can keep its rooms for breastfeeding moms, so long as it allows entry to "chestfeeding" men based on their "gender identity." Which is to say, MCC cannot keep the rooms reserved for breastfeeding moms.

HHS's brief reads similarly: "[t]he Rule does not displace the judgment of providers as to the medical necessity of gender affirming care, so long as a refusal of care is not based on animus or bias or a pretext for discrimination." Opp. at 7. What counts as "animus," "bias," or "discrimination?" The Rule tells us: "a categorical coverage exclusion or limitation for all health services related to gender transition or other gender-affirming care"—just like the policy held by MCC. § 92.207(b)(4). And in claiming an injunction would undermine the public interest, HHS says the quiet part out loud: "[T]he Rule precludes providers from denying patients medically necessary care they typically provide." Opp. at 3. So it is a medical care mandate.

**B.      The Rule mandates pro-abortion and gender-transition speech.**

HHS implausibly claims its Rule does not violate MCC's rights under the Free Speech Clause of the First Amendment. But the Rule forces MCC speak a notice telling patients it does "not discriminate on the basis of ... sex" *consistent with the scope of sex discrimination described at § 92.101(a)(2).*" 89 FR at 37696 (codifying § 92.8(b)) (emphasis added). Section 92.101(a)(2) includes "Gender identity" and "Pregnancy or related conditions," and the latter "include[es] ... termination of pregnancy," *i.e.*, abortion. 89 FR at 37634. Thus, despite HHS's protestations, the Rule requires MCC to tell patients it does not discriminate on the basis of gender

3

identity or abortion. This injures MCC both by compelling this speech and by making MCC's existing policy a violation. *See* Compl. [ECF 1] ¶¶ 159, 212.

HHS is wrong that the mandate satisfies First Amendment review, or that a lower form of scrutiny applies. The Supreme Court held there is no "professional speech" exception for medical centers when it rejected California's attempt to force pro-life clinics to give allegedly "factual" notices to patients about abortion. *NIFLA v. Becerra*, 585 U.S. 755, 767 (2018). HHS's defense of this mandate as a factual commercial disclosure similarly fails for two reasons: (1) it is not factual, and (2) HHS demonstrates no important interest in imposing it. MCC does not make distinctions concerning gender identity and abortion, so the notice is not accurate. Abortion and gender identity are also "anything but … 'uncontroversial' topic[s]," making notices about those topics more than merely "factual." *Id.* at 769. And Section 1557 gives HHS no authority to impose Section 1557 on the basis of abortion instead of sex, *see* 20 U.S.C. § 1688, nor on the basis of gender identity, for the reasons described in MCC's opening brief. Without statutory authority, the government has no interest to sustain its required notice under any level of scrutiny.

HHS also claims that, because the Rule lets MCC continue its pro-life message alongside HHS's compelled abortion notice, it suffers no injury. But the Supreme Court has long held that governments cannot compel speech just because the speaker may supplement the message with its own opposite view. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 576 (1995) (government cannot "require speakers to affirm in one breath that which they deny in the next").

HHS also incorrectly contends that the Rule does not compel using preferred pronouns or refraining from telling patients that "gender affirming care" is illegitimate. The Rule's words say otherwise: covered entities must "refer or provide accurate information about gender-affirming care." 89 FR at 37598. HHS refused to

disavow its pronoun requirement even when asked by a commenter, instead stating that the wrong pronouns can constitute harassment or hostility. 89 FR at 37596.

### C. The Rule exceeds HHS's statutory authority.

In interpreting Section 1557, HHS does little more than insist *Bostock* applies to Title IX even though the Supreme Court said it did not. HHS makes no serious attempt to reconcile the male/female language in Title IX and the Affordable Care Act ("ACA") with "gender identity" in this Rule. See MCC's Brief [ECF 7] at 11–18.

Recent court decisions further undermine HHS's view. In *State of Louisiana v. U.S. Department of Education*, the court explained that

> the ordinary meaning of "sex discrimination" at the time of enactment and the 1975 regulations of Title IX indicate that "sex discrimination" included only biological males or females. The Court finds no support in either the ordinary meaning or the 1975 regulations that Bostock's interpretation of "sex" should apply to Title IX.

No. 3:24-CV-00563, 2024 WL 2978786, at *11 (W.D. La. June 13, 2024). Likewise in *Texas v. Cardona*, No. 4:23-cv-00604-O, 2024 WL 2947022, at *28 (N.D. Tex. June 11, 2024), the court held that "neither Title IX nor its implementing regulations provide a basis for Defendants to define discrimination on the basis of sex in the manner described." And in *Tennessee v. Cardona*, No. 2: 24-072-DCR, 2024 WL 3019146, at *1 (E.D. Ky. June 17, 2024), the court ruled that "the new [Title IX gender-identity] rule contravenes the plain text of Title IX by redefining "sex" to include gender identity."

Forcing boys into girls' sports and locker rooms undermines Title IX's explicit purpose to make education and athletics more equal for women. So too here. The ACA cannot protect "women's unique health care needs," *see* 42 U.S.C. § 1315a(b)(2)(B)(i), if HHS erases "women" by imposing a "gender-identity" mandate.

## II. The Rule regulates and injures MCC.

### A. The Rule injures MCC now before HHS investigates.

Because the Rule directly regulates MCC, its injury is an "easy" question. *Food & Drug Admin. v. All. for Hippocratic Med.*, Nos. 23-235 & 23-256, 2024 WL 2964140, at *7 (U.S. June 13, 2024) ("*FDA v. AHM*"). HHS does not deny MCC is a recipient of funds under the Rule and is thus a covered entity. Starting on July 5, the Rule forces MCC to cease behavior that HHS considers "discrimination," and to submit "assurances" that it is complying. *See* 89 FR at 37699; *id.* at 37696 (codifying 45 C.F.R. §§ 92.101 ("Discrimination prohibited") & 92.5 ("Assurances required")).

A regulated entity will "almost invariably satisfy" injury and causation. *FDA v. AHM*, 2024 WL 2964140, at *7. For an entity directly regulated by a rule, the rule "has caused [it] an injury" and "a judgment preventing … the action will redress it." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 310 (5th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992)); *see also Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 264–65 (5th Cir. 2015). HHS claims MCC faces no injury, but the Rule not only concedes the pocketbook injuries it imposes, but also quantifies them. 89 FR at 37678 & Table 2. The Rule admits that changing its policies will cost MCC, *id.* at 37680, and MCC's policies on gender identity specifically must be revised because of this Rule.

Although it is well-established that the APA typically allows regulated parties to challenge final rules, HHS essentially asks this Court to hold that regulated parties can *never* challenge final rules until after it targets them with "years" of investigations. Opp. at 27. But MCC "need not 'wait[ ] for [HHS] to "drop the hammer" in order to have [its] day in court.'" *Texas v. Cardona*, 2024 WL 2947022, at *22 (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016)). The Fifth Circuit rejected a similar argument by DOJ in *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 927 (5th Cir. 2023). EEOC imposed a similar gender-identity mandate,

6

but the court rejected DOJ's assertion that businesses cannot sue until they face specific enforcement. *Id.*

Despite admitting that its onerous investigations take "years," Opp. at 27, HHS claims this also does not support injury. But the Fifth Circuit has emphasized that a rule injures regulated businesses if the agency can avoid judicial review before enforcement, which leaves "potential penalties hang[ing] over plaintiffs' heads like Damocles's sword." *Braidwood Mgmt.*, 70 F.4th at 928; *see also Lewis v. United States*, 88 F.4th 1073, 1079 n.4 (5th Cir. 2023) (calling similar arguments "intransigent[]"). Likewise in *Texas v. EEOC*, the court explained that "legal consequences may flow from an agency action even if 'no administrative or criminal proceeding can be brought for failure to conform' to the action." 933 F.3d 433, 444 (5th Cir. 2019) (quoting *Hawkes*, 578 U.S. at 600).

The Rule injures MCC starting on July 5 whether or not HHS launches enforcement that day. Without an injunction, MCC must change its behavior and speech concerning gender transitions and offer assurances of compliance.

**B.** *Neese v. Becerra* **neither applies nor prevents MCC's injury.**

HHS contends that *Neese v. Becerra*, 640 F. Supp. 3d 668 (N.D. Tex. 2022), negates MCC's injury, but that view is untenable for four reasons. First, *Neese* issued no injunction. *Id.* at 684–85. Yet only an injunction can prevent the Rule's injury. Nothing in *Neese* stops HHS from enforcing the Rule against MCC.

Second, *Neese* did not challenge this Rule. *Neese* was brought years before this Rule by two individual physicians challenging a notification that Defendant Becerra announced in 2021. *See Neese v. Becerra*, 342 F.R.D. 399, 405 (N.D. Tex. 2022). As HHS similarly admits, *Neese*'s judgment specifically concerns "Defendant Becerra in his Notification of Interpretation and Enforcement of May 10, 2021." Opp. at 30.

7

Third, there is little reason to believe the class *Neese* certified covers MCC. *Neese* certified a Federal Rule of Civil Procedure 23(b)(2) class of "healthcare providers" but did not define that term. 342 F.R.D. at 405–06. Yet the court spoke only of individual physicians and not of medical entities. It found standing only for the two individual physicians representing the class. *Id.* at 405–06. *Neese* also cited a CMS statistic from plaintiffs that there are more than 1.4 million healthcare providers in Medicare—and that statistic covers "non-institutional" providers only. *Id.* at 407 (citing Pls. Br. in Supp. of Mot. for Class Cert. at 4–5 & n.1 , ECF No. 45, *Neese*, No. 2:21-CV-163-Z (N.D. Tex. filed on Aug. 5, 2022).[1]

Fourth, HHS's claim that no healthcare provider must comply with its gender-identity mandate because of a *footnote* in the Rule's *preamble* strains credulity. For hundreds of pages in the Federal Register and in formal regulatory text, HHS insists that covered entities must comply with its mandate in many ways. But in court, HHS says nevermind: Footnote 118 (of 474) rendered all of this language irrelevant. This is not a permissible interpretation of a final rule. "[A]gencies … no less than Congress, do not 'hide elephants in mouseholes.'" *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 203 (5th Cir. 2019) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)). Any reasonable regulated entity with MCC's approach to gender issues would read this Rule and conclude it will be violation unless it changes its tune by July 5.

Finally, HHS's footnote does not say entities need not comply with the Rule— it only says HHS will not apply "the challenged interpretation" (the 2021 notice) "pending the appeal." The *Neese* appeal was argued in January. Saying it will enforce

---

[1] The brief cites a 2022 Excel spreadsheet of CMS data that documents 1,444,196 "Non-Institutional Providers" on tab 9, compared with 374,021 of "Institutional" entities on tab 8. https://web.archive.org/web/20221216044100/https://data.cms.gov/sites/default/files/2022-08/1f3f1a1f-f6f8-492c-a98a-4570253ff131/CMSFastFactsAug2022.xlsx

Case 5:24-cv-00048-LG-ASH   Document 23   Filed 06/26/24   Page 9 of 11

the mandate when that appeal concludes is the opposite of a disavowal, and adds the insult of uncertain timing to the Rule's plain injury. And even if HHS delays *enforcement*, that neither delays nor removes MCC's July 5 *compliance* obligation—it simply tells them they will suffer for their disobedience at a future unspecified time.

### C.     *American College of Pediatricians* **did not involve MCC.**

HHS claims another lawsuit not involving MCC somehow precludes injury here, but again it is mistaken. HHS cites *American College of Pediatricians v. Becerra*, No. 1:21-cv-195 (E.D. Tenn.) ("*ACP*"), a case filed in 2021, once again concerning Defendant Becerra's 2021 notification, not this Rule. The court dismissed *ACP*, without prejudice, on standing grounds. This is not relevant to this case for three reasons. First, MCC's case is not a refiling of *ACP*, because this case challenges HHS's new Rule, while *ACP* challenged other actions. In any event, that refiling would be permissible because the dismissal was without prejudice. Second, MCC is not a member of ACP, which is an organization of physicians; MCC is a business. MCC has a right to provide links to other groups on its website without being a member of those groups.

Dr. Artigues is an ACP member, but Dr. Artigues is not a party to this case. MCC is a different legal person than Dr. Artigues, and the Rule separately regulates corporations like MCC. By choosing to regulate "offices of physicians," 89 FR at 37678, not just individual doctors, HHS cannot deny those businesses their legal right under the APA to challenge an illegal rule directly regulating them.

### III.    **The APA authorizes the injunctive relief MCC requests.**

### A.     **MCC has shown a likelihood of success on its claims.**

HHS applies a standard not applicable to this injunction request, contending MCC must show that the Rule is invalid in all its applications. Opp. at 9–10. That is the standard for "a facial challenge to the constitutionality of a statute." *Ctr. for*

9

*Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006). MCC's case is an APA challenge to the statutory authority of a rule. MCC is likely to succeed if it can show the Rule exceeds HHS's statutory authority and is arbitrary and capricious, and therefore the "court shall … hold unlawful and set aside" the Rule under 5 U.S.C. § 706(2), (2)(A) & (2)(C). That is the question raised in this case.

### B. The APA's preliminary relief statute covers the Rule itself.

HHS contends § 705 does not authorize postponing the Rule itself or enjoining its enforcement, but only issuing relief for MCC. Opp. at 34. The Fifth Circuit has rejected this view. "Nothing in the text of Section 705, nor of Section 706, suggests that either preliminary or ultimate relief under the APA needs to be limited to [the plaintiff]. Instead, we conclude that the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). The plain text of § 705 says the Court may "postpone the effective date" and provide other appropriate relief concerning the "agency action," that is, the Rule.

### C. MCC can raise the Rule's violation of federalism.

HHS contends MCC cannot raise the Rule's violation of structural federalism doctrines; but those protect citizens, not just states. *Bond v. United States*, 564 U.S. 211, 220, 222 (2011) (an individual plaintiff "can assert injury from governmental action taken in excess of the authority that federalism defines. Her rights in this regard do not belong to a State.").

## CONCLUSION

For these reasons and those stated in its opening brief, MCC asks this Court to grant its motion, postpone the Rule's effective date, and enjoin HHS from its enforcement while this case is pending.

Respectfully submitted this 26th day of June, 2024.

|  |  |
|---|---|
| | */s/ D. Michael Hurst, Jr.* |
| **Matthew S. Bowman, PHV 60348** | **D. Michael Hurst, Jr., MB 99990** |
| **Alliance Defending Freedom** | **Nash E. Gilmore, MB 105554** |
| 440 First Street NW, Suite 600 | **Phelps Dunbar LLP** |
| Washington, DC 20001 | 4270 I-55 North |
| Telephone: (202) 393-8690 | Jackson, Mississippi 39211-6391 |
| Facsimile: (202) 347-3622 | Telephone: (601) 352-2300 |
| mbowman@ADFlegal.org | Facsimile: (601) 360-9777 |
| | mike.hurst@phelps.com |
| **Julie Marie Blake, PHV 60378** | nash.gilmore@phelps.com |
| **Alliance Defending Freedom** | |
| 44180 Riverside Parkway | |
| Lansdowne, Virginia 20176 | |
| Telephone: (571) 707-4655 | |
| Facsimile: (571) 707-4790 | |
| jblake@ADFlegal.org | |

*Counsel for Plaintiff McComb Children's Clinic, LTD.*