**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

| | | |
|---|---|---|
| **McComb Children's Clinic, LTD.**, *Plaintiff*, v. **Xavier Becerra**, et al., *Defendants*. | ) | **Case No.** 5:24-cv-00048-LG-ASH **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF PLAINTIFF MCCOMB CHILDREN'S CLINIC
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff McComb Children's Clinic, LTD. ("MCC") seeks final judicial relief to ensure that underserved Mississippi kids do not lose their healthcare providers. Defendants seek to force clinics like MCC to either perform or refer for dangerous transition procedures on kids—or close their doors.

Defendants' [35] Motion to Dismiss seeks to dismiss MCC's case on grounds this Court has already rejected. *See infra* § I.A. Defendants argue that *Neese v. Becerra*, 640 F. Supp. 3d 668 (N.D. Tex. Nov. 22, 2022), precludes MCC's case, even though MCC was not involved, the case provided no injunction, and it dealt with a previous notice. Defs.' Mem. Supp. Mot. Dismiss at 2–3, 6–12, ECF No. 36. Defendants also argue, with much less effort, that this Court should dismiss MCC's case because similar cases exist from other plaintiffs. *Id.* at 11–12.

Neither argument supports dismissal. Three times this Court has refused to accept Defendants' theory that *Neese v. Becerra* precludes this case. And there are no grounds for dismissing MCC's case just because other plaintiffs have sued.

## BACKGROUND

Earlier this year, Defendant United States Department of Health and Human Services ("HHS") published—and this Court stayed—a rule seeking to preempt state laws that protect children from the serious, life-altering effects of "gender-transition" procedures. *Tennessee v. Becerra*, No. 1:24cv161, 2024 WL 3283887, at *13–*14 (S.D. Miss. July 3, 2024), staying portions of Nondiscrimination in Health Programs and Activities, 89 FR 37522 (May 6, 2024) (the "Rule").

The Rule makes MCC ineligible to help children in need. MCC is a pediatric clinic in southwest Mississippi that cares for Medicaid and CHIP patients. Artigues Decl. ¶¶ 3, 7, 61, ECF No. 1-2. MCC cares for all kids, including patients who may identify contrary to their sex. *Id.* ¶¶ 10, 27–28. But MCC cannot perform, refer for, or affirm transition procedures that block puberty or remove healthy body parts. *Id.* ¶ 11–13. Yet under the Rule, HHS will take MCC's funding away if MCC follows state law against transition procedures, if it maintains lactation rooms for women, and if it insists on speaking to patients compassionately but truthfully about these issues. *Id.* ¶¶ 7, 62–63.

In its [35] Motion to Dismiss, HHS contends that *Neese v. Becerra*, 640 F. Supp. 3d 668 (N.D. Tex. 2022), means that MCC "faced no imminent enforcement" of the Rule "at the outset of the litigation," and so MCC lacks standing. Defs.' Mem. Supp. Mot. Dismiss at 2–3, 6–11, ECF No. 36. In the alternative, Defendants seek to dismiss MCC's case because other plaintiffs have challenged the Rule, too. *Id.* at 11–12.

## ARGUMENT

This Court has already considered and rejected both arguments presented in Defendants' Motion to Dismiss. *First*, this Court has already determined three times that *Neese v. Becerra* does not stop challenges to the Rule from moving forward. *Second*, there is no doctrine dismissing one plaintiff's case because someone else sued

elsewhere. Indeed, other courts are moving forward with parallel cases—no court has dismissed a case because other cases exist. And this Court has already held that MCC can move forward here even though other cases exist.

## I. *Neese v. Becerra* neither applies nor prevents MCC's injury.

### A. This Court has thrice rejected Defendants' *Neese* theory.

Defendants have raised—and this Court has no less than three times declined to adopt—the theory that *Neese v. Becerra* closes the courthouse doors to challenges to HHS's Rule. Yet in the bulk of their [36] Memorandum in Support of Motion to Dismiss, Defendants rest on this theory again. Defs.' Mem. at 2–3, 6–11. This Court was right before, and it should stay the course.

*First*, when MCC sought a preliminary injunction against the Rule, Defendants asked to delay the briefing schedule and for this Court not to consider MCC's preliminary injunction motion based on *Neese v. Becerra*, 640 F. Supp. 3d 668, 685–87 (N.D. Tex. 2022). But after a status conference with Magistrate Judge Harris, and after acknowledging Defendants' *Neese* theory, the Court set briefing to occur. Scheduling Order at 2, ECF No. 12.

*Second*, Defendants opposed all preliminary injunctive relief against the Rule, claiming that *Neese* stops every challenge to the Rule's mandate to perform and promote transition procedures that block puberty and remove kids' healthy body parts. Defs.' Br. Opp. Pl.'s Mot. Delay Effective Date & Prelim. Inj. at 2–3, 22, 25, 30–32, ECF No. 18. But in granting a nationwide preliminary injunction to the States, one that temporarily protects MCC against the Rule, the Court rejected Defendants' theory. *See Tennessee v. Becerra*, 2024 WL 3283887, at *12 & n.11. This Court held that because *Neese* concerned a prior guidance and issued no injunctive relief, it does not stop HHS from enforcing anything. Further, that the Rule mentions *Neese* in a passing footnote, cannot negate the Rule's textual gender-identity mandate. *See id.*

*Third*, after MCC filed its [27] Motion for and [28] Memorandum in Support of Partial Summary Judgment against the Rule based on the Court's ruling in the States' case, Defendants moved for an indefinite stay, based mainly on their view of *Neese*. Defs.' Mot. Stay at 1, 7–9, ECF No. 29. But this Court again held that *Neese* did not block this case. Order Den. Mot. Stay at 3, ECF No. 34. Defendants claimed "that Plaintiff has already obtained relief because it is a class member in *Neese v. Becerra*, a case in which the court held that HHS's Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 FR 27984 (May 25, 2021), was unlawful and unenforceable." *Id.* at 2. But this Court explained, "Defendants are currently seeking to overturn" *Neese* "on appeal," and Defendants' *Neese* appeal, No. 23-10078 (5th Cir.), remains pending today. *Id.* at 3. So, on Defendants' theory, "If Defendants are successful, Plaintiff will no longer be protected from Defendants' enforcement of the 2021 Notification and the 2024 Final Rule." *Id.* As a result, the Court held "that a stay is unwarranted." *Id.*

It is simply not plausible that a decision issued before this Rule existed and that *does not enjoin HHS* from enforcing either that old rule or this new one, could negate MCC's ability to challenge this rule as a regulated entity.

**B. The Rule directly regulates MCC and imposes costs on it.**

HHS is wrong that MCC cannot challenge an illegal final rule that regulates it. "[T]he fact that the Plaintiffs are now subject to regulations that are contrary to law is itself a concrete injury sufficient to give them standing." *Tex. Med. Ass'n v. HHS*, 110 F.4th 762, 773 (5th Cir. 2024). "When a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* (cleaned up).

MCC is an object of the Rule. It receives Medicaid and CHIP funding *See* Compl. ¶¶ 181–84, ECF No. 1. That is why many federal courts have concluded that similar plaintiffs possess standing to bring similar challenges. *Tennessee*, *v. Becerra* 2024 WL 3283887, at *4, *10–*12; *Texas v. Becerra*, No. 6:24-cv-211, 2024 WL 3297147, at *1 (E.D. Tex. July 3, 2024); *Florida v. HHS*, No. 8:24-cv-1080, 2024 WL 3537510, at *5–*6 (M.D. Fla. July 3, 2024). MCC is a covered entity under the Rule, which obligates MCC: MCC must cease behavior that HHS considers "discrimination," and it must submit "assurances" that it is complying. *See* 89 FR at 37699; *id.* at 37696 (codifying 45 C.F.R. §§ 92.101 ("Discrimination prohibited") & 92.5 ("Assurances required")). These provisions require, among other things, MCC to perform or refer for "gender transition" procedures, remove its "Breastfeeding Moms Only" signs on its lactation rooms, let biological males use its lactation rooms for "chestfeeding," and cease providing its views on "gender transition" procedures and instead give advice and use pronouns that HHS considers "accurate." *See* Pl.'s Mem. Supp. Mot. Partial. Summ. J. at 4–7, ECF No. 28 (describing how the rule requires and forbids MCC's actions).

The Rule also imposes financial compliance costs on MCC. The Rule itself quantifies the pocketbook injuries it imposes. 89 FR at 37678 & Table 2. MCC must spend time and money reviewing the rule, changing policies, providing notices, training employees, and keeping records. 89 FR at 37677–85, 37689. Some costs have already been incurred in part, Artigues Decl. ¶¶ 31–50, ECF No. 1-2, and more are "fairly likely[.]" *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021). These costs are "obvious" concrete harms. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). They are particularized because they affect MCC individually. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). These harms "will likely be redressed by" judicial relief because a final judgment would prevent MCC "from incurring compliance costs." *Tennessee v. Becerra*, 2024 WL 3283887, at *4. And of

course, the Rule threatens MCC with the pocketbook injury of loss of federal Medicaid and CHIP funding if it does not comply. MCC's "loss of federal funds is a matter of when, not if." *Texas v. Becerra*, 2024 WL 3297147, at *9.

Because the Rule imposes obligations and compliance costs on them, clinics like MCC "are entitled to receive clarification from this court before … exposing themselves to punishment or enforcement action.'" *Tennessee v. Becerra*, 2024 WL 3283887, at *11 (quoting *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 927–28 (5th Cir. 2023)). "To require [MCC] to challenge these regulations only as a defense to an action brought by the Government might harm [MCC] severely and unnecessarily." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967). MCC "need not 'wait[ ] for [HHS] to 'drop the hammer' in order to have [its] day in court.'" *Texas v. Cardona*, No. 4:23-cv-00604, 2024 WL 3658767, at *22 (N.D. Tex. Aug. 5, 2024) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016)). After all, "legal consequences may flow from an agency action even if 'no administrative or criminal proceeding can be brought for failure to conform' to the action." *Texas v. EEOC*, 933 F.3d 433, 444 (5th Cir. 2019) (quoting *Hawkes*, 578 U.S. at 600).

These kinds of injuries are why, for example, when the federal government imposed a similar gender-identity mandate on employers in *Braidwood Management, Inc. v. EEOC*, 70 F.4th at 927, the Fifth Circuit rejected the assertion that businesses cannot sue until they face specific enforcement. *Id.* That court recognizes that a rule injures regulated businesses when an agency evades judicial review before enforcement and leaves "potential penalties hang[ing] over plaintiffs' heads like Damocles's sword." *Id.* at 928; *see also Lewis v. United States*, 88 F.4th 1073, 1079 n.4 (5th Cir. 2023) (calling DOJ arguments against this type of injury "intransigent[ ]"). The Fifth Circuit likewise held that healthcare providers may bring an "immediate challenge" to HHS' first iteration of the Rule. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376–77 (5th Cir. 2022) (cleaned up).

### C. *Neese* issued inapplicable relief for a different agency action.

As this Court recognized, *Neese* is inapplicable for many reasons. *Tennessee v. Becerra*, 2024 WL 3283887, at *12.

*First*, *Neese* issued declaratory relief but not injunctive relief. Nor was *Neese*'s lack of an injunction an oversight. The *Neese* court considered whether to issue an injunction and decided not to. The court observed that the plaintiffs *at first* asked the court for three things: to "(1) 'hold unlawful and set aside Secretary Becerra's Notification' [under the APA]; (2) 'enjoin Secretary Becerra from using or enforcing the interpretation of [S]ection 1557 that appears in the Notification'; and (3) issue 'declaratory relief.'" *Neese*, 640 F. Supp. 3d at 684 (quoting the plaintiffs' filing). The *Neese* court then stated, "the Court will assess the remedies Plaintiffs seek under the APA and DJA. The Court, however, will not assess the propriety of injunctive relief because Plaintiffs do not brief factors relevant to the appropriateness of injunctive relief." *Id.* In other words, the plaintiffs failed to brief their request for injunctive relief, so the court specified it was not issuing such relief.

Defendants' view contradicts the *Neese* order. It is untenable to contend that the order, which explicitly issues mere declaratory relief, is "equivalent" to an injunction. Defs.' Mem. Supp. Mot. Dismiss at 8, ECF No. 36. This view denies the District Court its inherent discretion to "craft[ ]" equitable relief appropriate to the circumstances, which is necessarily "the hallmark of traditional equitable practice." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1577 (2024). The *Neese* court had the discretion to issue declaratory relief *and not injunctive relief*, and it did so. Defendants' generic inferences from declaratory relief treatises in no way negate that discretion.

*Neese* therefore does not protect MCC, because it does not stop HHS from doing anything. Only an injunction for MCC, or an order vacating the Rule under the APA, can prevent the Rule's mandates and compliance costs. *Neese* does not remedy either

of those injuries. MCC needs a final *injunction* or an order *setting the Rule aside* under 5 U.S.C. § 706. HHS asks this Court to presume that HHS "'will adhere to the law as declared by the court'" in *Neese*. Defs.' Mem. Supp. Mot. Dismiss at 8, ECF No. 36 (citing *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985)). This is an empty promise, and only an injunction will ensure that HHS cannot take an enforcement action.

*Second*, *Neese* challenged a different action, not this Rule. This Rule did not exist either when *Neese* was filed or when the case concluded. Instead, *Neese* challenged a notification that Defendant Becerra announced in 2021. *See Neese v. Becerra*, 342 F.R.D. 399, 405 (N.D. Tex. 2022). "The *Neese* Judgment was specifically tied to a general notice of policy issued by HHS, while the present lawsuit concerns a different final rule, which is much more detailed and extensive in scope." *Tennessee v. Becerra*, 2024 WL 3283887, at *12. Thus, the *Neese* order did not discuss particular requirements in this Rule like the obligation to change its policies and notices, or the mandate that MCC submit assurances of compliance. Claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint" as here. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (cleaned up).

*Third*, there is significant doubt whether the class certified in *Neese* covers MCC. *Neese* was brought by individual physicians and certified a Federal Rule of Civil Procedure 23(b)(2) class of "healthcare providers." *See Neese v. Becerra*, 342 F.R.D. at 405–06. The court never defined that term. *Id*. Yet in speaking of "healthcare providers" the *Neese* court spoke only of individual physicians, not of entities like MCC. Instead, *Neese* cited a CMS statistic from its plaintiffs saying there are more than 1.4 million healthcare providers in Medicare—a statistic that covers "non-institutional" providers only. *Id*. at 407 (citing Pls. Br. in Supp. of Mot. for Class Cert.

at 4–5 & n.1, ECF No. 45, *Neese*, No. 2:21-CV-163-Z (N.D. Tex. filed on Aug. 5, 2022).* *Neese* also found standing only for the two individual physicians representing the class. *Id*. at 405–06.

*Fourth*, a "vague footnote" in the Rule's preamble did not neuter the Rule's operative text. *Tennessee v. Becerra*, 2024 WL 3283887, at *12 & n.11. As this Court held, this footnote is "cold comfort to those regulated by the May 2024 Rule" when HHS spends hundreds of pages in the *Federal Register* insisting that clinics must comply, *id*., even quantifying all the costs clinics must start incurring in the first year. 89 FR at 37678 & Table 2. The regulatory text lacks this non-binding footnote, and the regulation itself makes no exceptions for entities like MCC. Any reasonable regulated entity in MCC's place would read the Rule and conclude that it will be penalized if it fails to comply. That is why MCC reasonably began compliance costs, Artigues Decl. ¶¶ 31–50, ECF No. 1-2, and why, if the Rule is not permanently enjoined, MCC must "either incur" more "substantial costs in order to implement" the Rule—"or lose federal funding." *Tennessee v. Becerra*, 2024 WL 3283887, at *12. HHS's assertion that this footnote negates any substantial enforcement risk is incorrect: "Administrative agencies, no less than Congress, do not hide elephants in mouseholes." *Tennessee v. Becerra*, 2024 WL 3283887, at *12 n.11 (cleaned up). As a result, "neither the *Neese* Judgment nor the footnote explicitly relieve these Plaintiffs from compliance with the May 2024 Rule.… Plaintiffs have no assurance that they will be excused from incurring compliance costs when the May 2024 Rule goes into effect." *Id*.

---

* The brief cites a 2022 Excel spreadsheet of CMS data that documents 1,444,196 "Non-Institutional Providers" on tab 9, compared with 374,021 of "Institutional" entities on tab 8. https://web.archive.org/web/20221216044100/https://data.cms.gov/sites/default/files/2022-08/1f3f1a1f-f6f8-492c-a98a-4570253ff131/CMSFastFactsAug2022.xlsx.

*Finally*, as this Court noted, Defendants have appealed *Neese*. *See Neese,* 640 F. Supp. 3d 668, *appeal docketed,* No. 23-10078 (5th Cir. Jan. 25, 2023). The Rule's vague footnote only says that HHS will not apply "the challenged interpretation" (that is, the 2021 notice) "pending the appeal." 89 FR at 37574 n.118. That is the opposite of a disavowal. Defendants cite *Joint Heirs Fellowship Church v. Akin*, 629 Fed. App'x 627, 630–31 (5th Cir. 2015), but in that case there was "no evidence that the Commission is failing to apply our interpretations." *Id.* at 631. Here, the Rule itself represents hundreds of pages of proof that HHS is imposing a gender identity mandate *even after Neese*. And if the footnote means anything, it reiterates HHS's intent to do so by reversing *Neese* on appeal. If HHS had really decided to turn over a new leaf after *Neese*, it would have scrapped the Rule rather than finalizing it.

HHS claims the Rule is as unlikely to be enforced as the portion of the Affordable Care Act's individual mandate at issue in *California v. Texas*, 593 U.S. 659 (2021). Defs.' Mem. Supp. Mot. Dismiss at 8–9, ECF No. 36. But unlike that mandate, which *Congress negated* by removing its enforcement mechanism, here, in Section 1557, Congress made its enforcement mechanisms explicit by incorporating them from other statutes, 42 U.S.C. § 18116. The Rule repeats the same incorporation of enforcement mechanisms. 89 FR at 37701 (codifying enforcement mechanisms in 45 C.F.R. § 92.301). MCC will lose eligibility for Medicaid and CHIP funding and it risks liability if it violates the Rule, exposing it to investigations and lawsuits. Compl. ¶¶ 57–66, 138–52 (collecting various civil and criminal enforcement mechanisms).

## II. The many challenges to the Rule underscore the need for review.

In the alternative, Defendants urge this Court to dismiss MCC's case for no reason at all—saying that the Court should just dismiss this case without prejudice because other harmed plaintiffs have also brought challenges. Defs.' Mem. Supp. Mot. Dismiss at 2, 11–12, ECF No. 36 (citing *Tennessee v. Becerra*, No. 1:24-cv-00161-LG-

BWR (S.D. Miss. July 3, 2024); *Texas v. Becerra*, No. 6:24-cv-00211-JDK (E.D. Tex. Aug. 30, 2024)). But there is no doctrine dismissing a plaintiff's case because other people sued elsewhere.

Defendants have tried this argument before, unsuccessfully urging it as another reason to stay this case indefinitely. Defs.' Mot. Stay 1–6, ECF No. 29; Defs.' Reply Supp. Mot. Stay at 1–5, ECF No. 33. But when this Court refused to stay MCC's case, the Court explained that the pendency of later challenges like *Tennessee v. Becerra*, No. 1:24cv161-LG-BWR, 2024 WL 3283887 (S.D. Miss. July 3, 2024), *appeal docketed*, No 24-60462 (5th Cir. Sept. 5, 2024), does not negate MCC's harm from the Rule. Order Den. Mot. Stay at 2–3, ECF No. 34. Instead, because Defendants seek to overturn those decisions on appeal, the Court set briefing on MCC's [27] Motion for Partial Summary Judgment. *Id.* at 3.

There is no just reason to dismiss MCC's case, and the cases Defendants cite are highly inapplicable. Start with *Aleograph Co. v. Elec. Rsch. Prods., Inc.*, 82 F.2d 625, 626 (5th Cir. 1936), which Defendants cite for the principle that the Court may "prevent annoyance through a multiplicity of suits." Courts are all-too-familiar with vexatious litigants who file multiple cases against the same person after losing repeatedly. That is the "multiplicity" involved in *Aleograph*, where the same parties filed the same cases against each other after courts had issued final rulings. *Id.* at 625–26. It has nothing to do with this case, where MCC has never sued HHS before, where MCC sues over a new rule, and where MCC has never received a merits or even preliminary ruling. Defendants imply that courts may simply dismiss "annoying" litigation. The opposite is true: federal courts have a "virtually unflagging" duty "to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). A "district court may not dismiss declaratory judgment actions "on the basis of whim or personal

disinclination." *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (cleaned up).

Next Defendants cite *Pontchartrain Partners, LLC v. Tierra de Los Lagos, LLC*, 48 F.4th 603 (5th Cir. 2022). In that case, two construction companies sued *each other* multiple times, and the question was whether to dismiss one of those cases over the other. *Id.* at 605. That situation has nothing to do with this case. MCC is not party to any of the other cases challenging the new Rule. Moreover, even in *Pontchartrain Partners*, only "compelling circumstances" justify "dismissal of a first-filed declaratory judgment action." *Id.* at 606. There are no compelling circumstances to deny MCC its day in court.

Then Defendants cite *U.S. Chamber of Com. v. FTC*, 2024 WL 1954139, at *4 (E.D. Tex. May 3, 2024), where the case at issue was the *second* case filed, and the plaintiff in the first case was a member of the association filing the second case. Here the opposite is true: MCC filed its case before the States filed their case. And although the case in Florida was filed before this complaint, the court there explicitly declined to issue relief that encompasses MCC. *Florida v. HHS*, 2024 WL 3537510, at *21. So the relief afforded in that case is not duplicative of the relief MCC requests. Finally, Defendants cite *Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. HHS*, 557 F. Supp. 3d 224, 232 (D. Mass. 2021), when the court *denied* motions to dismiss in large part. Neither *Chamber of Com.* nor *Boston* is, of course, binding on this Court. Defendants cite no binding precedent counseling dismissal of MCC's case just because other plaintiffs have filed other lawsuits against this illegal Rule.

Defendants argue that the States' case before this Court fully encompasses MCC's arguments. But that is incorrect and contradicts Defendants' own position in that litigation. Defendants are making different arguments against the States' standing in that case that do not apply here, like the argument that states cannot

seek relief for their citizens. That argument does not apply to MCC, but it does prove that the States' case does not encompass MCC's claims or grounds for relief.

Likewise Defendants have argued that this Court's relief against the Rule and similar injunctions should not encompass any parties other than the plaintiffs in a case. Defs.' Mem. Supp. Mot. Dismiss at 4, ECF No. 36 (citing Ord. Modifying Stay, *Texas v. Becerra*, ECF No. 41, No. 6:24-cv-00211-JDK (E.D. Tex. Aug. 30, 2024), *modifying Texas v. Becerra*, 2024 WL 3297147; *Tennessee v. Becerra*, 2024 WL 3283887, at *13–*14). In other words, Defendants asked the Fifth Circuit to cut MCC out of these injunctions. That position conflicts with Defendants' [35] Motion to Dismiss here. Defendants are telling the Fifth Circuit that relief in those cases cannot and should not encompass MCC. Defendants are telling this Court that those cases can issue relief for MCC so much that MCC's case should be dismissed.

Defendants seek to flip the Administrative Procedure Act's presumption of judicial review on its head. *See Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *aff'd by equally divided Court*, 579 U.S. 547 (2016). If Defendants are right, any challenge to a harmful federal regulation could be dismissed—not for any legal or factual defect—but simply because the regulation harms so many people that it has drawn more than one lawsuit. Defendants' position might surprise many courts across the country, which routinely rule on more than one challenge to an unlawful regulation. *See, e.g.*, *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *1 n.2 (11th Cir. Aug. 22, 2024) (per curiam) (collecting eight district court opinions entering relief against the Department of Education's Title IX rule *and* more preliminary relief). The Supreme Court itself unanimously "accept[ed] that the plaintiffs were entitled to preliminary injunctive relief as to … the central provision that newly defines sex discrimination to include discrimination on the basis of sexual orientation and gender identity" without

criticizing the multiplicity of suits. *Dep't of Educ. v. Louisiana*, 144 S. Ct. 2507, 2509–10 (2024).

In the end, this Court's injunction in *Tennessee v. Becerra* is a reason to grant MCC relief—not to deny it. This Court has concluded that this "unworkable" Rule exceeds Defendants' statutory authority. *Tennessee v. Becerra*, 2024 WL 3283887, at *5, *9–*10. "Neither Title IX nor Section 1557 contain clear statements prohibiting discrimination on the basis of gender identity; they only refer to 'sex.'" *Id.* at *9. And any impact on HHS from having to defend lawsuits against its unlawful Rule pales in comparison to the Rule's unlawful impact. *Id.* at *13.

## CONCLUSION

This Court should deny Defendants' [35] Motion to Dismiss.

Respectfully submitted this 15th day of October, 2024.

*/s/ D. Michael Hurst, Jr.*

**Matthew S. Bowman, PHV 60348**
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
mbowman@ADFlegal.org

**Julie Marie Blake, PHV 60378**
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org

**D. Michael Hurst, Jr., MB 99990**
**Nash E. Gilmore, MB 105554**
**Phelps Dunbar LLP**
4270 I-55 North
Jackson, Mississippi 39211-6391
Telephone: (601) 352-2300
Facsimile: (601) 360-9777
mike.hurst@phelps.com
nash.gilmore@phelps.com

*Counsel for Plaintiff McComb Children's Clinic, LTD.*