## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

### WESTERN DIVISION

|  |  |  |
|---|---|---|
| MCCOMB CHILDREN'S CLINIC, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:24-cv-00048-LG-ASH |
| | ) | |
| ROBERT F. KENNEDY, JR., in his official | ) | |
| Capacity as Secretary of the United States | ) | |
| Department of Health and Human Services, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM ADDRESSING MOOTNESS

A case can become moot in multiple ways. This case is moot given, among other reasons, this Court's judgment in *Tennessee v. Kennedy*, vacating agency statements in the Department of Health and Human Services ("HHS")'s Section 1557 regulations, codified at 45 C.F.R. Part 92. Courts have recognized that a nationwide vacatur order issued by another tribunal is one way that a former Article III controversy between adverse litigants becomes insufficiently live, mooting the case.[1] As Plaintiff McComb Children's Clinic, Ltd. ("MCC"), does not dispute, ECF No. 61 at 1

---

[1] *See, e.g., Ctr for Biological Diversity v. Raimondo*, Civ. A. No. 18-112 (JEB), 2024 WL 324103, at *4 (D.D.C. Jan. 29, 2024) (challenge to biological opinion moot when it "has already been vacated as to that fishery on different grounds"); *Mossman v. CDC*, No. 21-CV-28-CJW-MAR, 2021 WL 5498746, at *5 (N.D. Iowa Nov. 23, 2021) (challenge to CDC eviction moratorium moot in light of another district court's "rulings and [its] nationwide effect"); *Aland v. Salazar*, 2012 WL 12985149, at *1 (D. Idaho Mar. 23, 2012) ("Aland is unable to demonstrate that further effective relief can be given since the rule delisting the bears has already been vacated"); *see also* 13B Wright & Miller's Fed. Prac. & Proc. § 3533.2.1 (3d ed. 2025) ("If full relief is accorded by another tribunal . . . a proceeding seeking the same relief is moot."); *Moore v. La. Bd of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (dismissing as moot challenge to statutory provision where another court invalidated the provision in another case brought by different plaintiffs).

(agreeing that the Court has already granted "aspects of relief that MCC requested here"), this Court "is unable to provide relief beyond what [the judgment in *Tennessee*] already gave." *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022).[2]

MCC raises two points contesting mootness. ECF No. 61. First, MCC invokes a putative facial pre-enforcement challenge to 45 C.F.R. § 92.101(a)(2)(v). *Id*. at 5-6. That provision codifies an agency statement that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes. 45 C.F.R. § 92.101(a)(2)(v). Second, MCC invokes a putative facial pre-enforcement First Amendment challenge to an unspecified provision of 45 C.F.R. Part 92, claiming MCC is being forced to tell patients and the government that it does not discriminate on the basis of termination of pregnancy. ECF No. 61 at 6-8. But these claims are not properly before the Court at all because they were never adequately presented in the operative complaint. And even if they were, these claims are not embedded in any live Article III controversy between adverse litigants, whether analyzed as a matter of standing or mootness. Even if the Court had jurisdiction to consider these putative claims, moreover, the Court should consider ordering MCC to show cause why it should not enter judgment for Defendants on them.

## I.    HHS's Codification of a Statement That Title IX Encompasses Sex Stereotyping Does Not Establish a Live Controversy Between Adverse Parties.

MCC's putative claim to relief against the agency statement that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes is not embedded in a live Article III case or controversy. Since at least 2016, HHS has maintained that Section 1557 encompasses sex stereotyping claims. *See Nondiscrimination in Health and Health Education Programs or Activities*, 85 Fed. Reg. 37,160, 37,185 (June 19, 2020) (distinguishing between acknowledging biological differences and "impermissible" sex stereotyping); *see also id*. at 37,239 (acknowledging that "sex stereotyping claims [are] authorized by Title IX and Section 1557"). Yet MCC does not point to a single instance since Section 1557's enactment when HHS has

_____

[2] MCC does not contend that any mootness exception applies. ECF No. 61.

2

questioned MCC's Federal financial assistance in light of Section 1557's ban on sex stereotyping. *See Nat'l Family Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 830 (D.C. Cir. 2006) (no Article III standing when similar earlier provision hadn't "given rise to the parade of horribles that plaintiff hypothesizes—not even a single horrible"). There is thus no basis to conclude that MCC faces imminent enforcement based on its conduct in light of the agency's statement that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes.

The Court should disregard MCC's gestures toward 45 C.F.R. § 92.101(a)(2)(v). First, courts decline to revive moot cases by reading into a complaint an argument not adequately presented. Every count in the Complaint challenges Part 92's "gender-identity nondiscrimination requirement," Compl. ¶¶ 257, 282, 306, which was codified at 45 C.F.R. § 92.101(a)(2)(iv). No count even references, let alone challenges, 45 C.F.R. § 92.101(a)(2)(v). Second, issuing an order vacating 45 C.F.R. § 92.101(a)(2)(v) "to the extent it encompasses gender-identity" discrimination, ECF No. 61 at 11 n.1, would be redundant of the Final Judgment in *Tennessee* and thus ineffective because that judgment already vacated the regulatory provision that discrimination on the basis of sex includes discrimination on the basis of gender identity. Third, any dispute over § 92.101(a)(2)(v) is not embedded in any Article III case or controversy between adverse parties. MCC's alleged conduct does not give rise to any imminent threatened enforcement of that provision by Defendants, especially in light of the President's Executive Orders.

### A. The Complaint Includes no Claim for Relief from 45 C.F.R. § 92.101(a)(2)(v).

MCC's claim to relief against 45 C.F.R. § 92.101(a)(2)(v) is not properly before the Court because the Complaint fails to adequately present any claim seeking to hold unlawful and set aside that provision of Title 45 Part 92. Courts "decline to revive [a moot] case by reading into [a

plaintiff's] complaint an argument not adequately presented." *See Larsen v. U.S. Navy*, 525 F.3d 1, 5 (D.C. Cir. 2008).[3]

Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide "a short and plain statement of the claim" and the "grounds for the court's jurisdiction." The Fifth Circuit has made clear that a claim for relief against agency regulations must be limited to the specific provisions that the plaintiff "*actually challenges*." *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). Moreover, to plead standing to challenge a regulation, plaintiffs must plausibly allege "all the elements of standing for each [separate] provision" of the "administrative code" that they "seek to challenge[.]" *In re Gee*, 941 F.3d 153, 162 n.4 (5th Cir. 2019). On the merits, unless the plaintiff is actually challenging a final agency action interpreting or applying the provision even further, the plaintiff must plausibly allege that no set of circumstances exists under which the specific provision would be valid. *See infra* at pp. 19-22. These requirements mean that a plaintiff must identify and provide notice to the defendant in the Complaint of the particular provision of a regulation it is seeking to challenge. To condone otherwise would be "confusing[,]" *In re Gee*, 941 F.3d at 162 n.4, and violate Defendants' entitlement to "a short and plain statement of the claim[,]" Fed. R. Civ. P. 8(a)(2).

The Complaint includes three counts. Compl. ¶¶ 257-323. Each count is explicit—"MCC brings this claim as to the rule's gender-identity nondiscrimination requirement and the implications thereof under the rule." Compl. ¶ 257 (count I); ¶ 282 (count II); ¶ 306 (count III). And the agency's statement that discrimination on the basis of sex includes discrimination on the

---

[3] *See also Regalado v. Dir., Ctr for Disease Control*, 2023 WL 239989, at *1 (11th Cir. Jan. 18, 2023) (rejecting plaintiff's "shift to rely on" a different agency statement as not "salvag[ing]" case from mootness); *Ctr. for Biological Diversity v. Raimando*, Civ. A. No. 18-112, 2024 WL 324103, at 5 (D.D.C. Jan. 29, 2024) (courts reject "efforts to keep [a] case alive by 'broaden[ing] the scope of their original action'" (quoting *Fraternal Order of Polic, DC v. Ruben*, 134 F. Supp. 2d 39 (D.D.C. 2001)); *Bongiovanni v. Austin*, No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445, at *7 (M.D. Fla. July 5, 2023) (holding case was moot notwithstanding arguments about other policies that plaintiffs did "not oppose . . . in their Complaint").

basis of gender identity is codified in clause (iv) of 45 C.F.R. § 92.101(a)(2) (and subject to this Court's Final Judgment and vacatur order in *Tennessee*).  The statement is not codified in clause (v).  Clause (v) instead provides that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes.  The Complaint includes no count purporting to bring a challenge to the provision codified at 45 C.F.R. § 92.101(a)(2)(v).  Compl. ¶¶ 257-323.

Nor does Part 92 include an agency statement that discrimination on the basis of sex stereotypes includes discrimination on the basis of gender identity that the Court may hold unlawful and set aside under the Administrative Procedure Act ("APA").  *See* 5 U.S.C. §§ 551(4) (defining rule as requiring a specific "agency statement"); 551(13) (defining agency action); 704 (permitting for judicial review of only "final agency action"); 706(2) (permitting the court to "hold unlawful and set aside" only specific "agency action, findings, or conclusions").  In its response, MCC essentially asks the Court to hold unlawful and set aside a future agency action interpreting or applying § 92.101(a)(2)(v) to "prohibit[] gender identity discrimination[.]"  ECF No. 61 at 11.  But it "is a tautology that [MCC] may not challenge [§ 92.101(a)(2)(v)] as applied [unless] the [agency] applies the regulations" in that manner.  *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997), *abrogated on other grounds by Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024).  MCC does not actually challenge a final agency action interpreting or applying § 92.101(a)(2)(v) to prohibit gender identity discrimination.  Compl. ¶¶ 257-323.  The Complaint thus fails to state an APA claim for this relief.[4]

---

[4] The Complaint alleges that sex stereotyping theories provided part of the agency's rationale for its statement at 45 C.F.R. § 92.101(a)(2)(iv).  Compl. ¶ 74.  But that allegation provided no notice that MCC sought to hold unlawful and set aside anything but the gender identity discrimination provision at issue (§ 92.101(a)(2)(iv)).  Nor can MCC bypass Rule 8's notice requirements and the requirement that an APA claim target a specific final agency action with statements like those at paragraph 78 of the Complaint.  Paragraph 78 does not state a claim for APA relief because it provides Defendants with no notice of the specific final agency action (*i.e.* an agency statement insofar as MCC challenges a "rule"), that MCC seeks to hold unlawful and

**B. Any Relief Against 45 C.F.R. § 92.101(a)(2)(v) "To the Extent That It Encompasses Gender-Identity Discrimination" Would be Redundant and Therefore Ineffective.**

Issuing an order vacating 45 C.F.R. § 92.101(a)(2)(v) "to the extent it encompasses gender-identity" discrimination, ECF No. 61 at 11 n.1, would be redundant and ineffective because the Court already vacated the agency's statement that discrimination on the basis of sex includes discrimination on the basis of gender identity in *Tennessee*. This Court's vacatur order thus already precludes the agency from treating as binding its statement that discrimination on the basis of sex includes discrimination on the basis of gender identity. Section 92.101(a)(2)(v), in contrast, includes no binding agency statement that discrimination on the basis of sex stereotypes includes discrimination on the basis of gender identity.[5] Vacating § 92.101(a)(2)(v) "to the extent it encompasses gender-identity" discrimination, ECF No. 61 at 11 n.1, would therefore have no real-world impact—the Court already vacated the relevant regulatory provision in *Tennessee*. When "relief" that a "court may grant in the action before it [is] redundant, that potential relief is ineffectual, and thus the case is moot." *Leal v. Becerra*, No. 20-11083, 2021 WL 5021034, at *2 (5th Cir. June 3, 2021).

The Fifth Circuit has explained that "[v]acatur operates on the legal status of [an agency statement], causing the [statement] to lose binding force." *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 951 n. 100 (5th Cir. 2024), *rev'd on other grounds*, 606 U.S. 748 (2025) (citation omitted). *See also, e.g. Roe v. Anderson*, 134 F.3d 1400, 1404 (9th Cir. 1998) (explaining that a "judgment is not binding precedent" after "the Supreme Court ultimately vacated it"); 5 U.S.C.

---

set aside, even if it was a claim stated in one of the counts. *See* Fed. R. Civ. P. 10(b); 5 U.S.C. § 704 (only final agency action is subject to review).

[5] Insofar as MCC is suggesting that the Court should vacate an agency statement in the preamble to the regulations, any such order would be ineffective because statements in the preamble to the regulation were already intended to be nonbinding and without any legal effect. *See Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986) (Scalia, J). Defendants also lacked notice of any such claim, because no count in the operative complaint purports to bring a challenge to a preamble statement. Rather, again, each count of the Complaint is explicit that "MCC brings this claim as to the rule's gender-identity nondiscrimination requirement[.]" Compl. ¶ 257 (count I); ¶ 282 (count II); ¶ 306 (count III).

§551(4) (defining rule as a particular type of "agency statement").  Promulgating an agency statement in the Code of Federal Regulations indicates that the Government intended the statement to have "legal effect," 44 U.S.C. § 1510, binding HHS hearing examiners to the specific "agency statement of general or particular applicability and future effect" that is, as relevant here, "designed to . . . interpret" Section 1557, 5 U.S.C. § 551(4) (defining rule).  But due to this Court's Final Judgment in *Tennessee*, HHS may not treat the agency statement in Part 92 that discrimination on the basis of sex includes discrimination on the basis of gender identity as binding without violating this Court's nationwide vacatur order.

Section 92.101(a)(2)(v), however, includes no "agency statement of general or particular applicability and future effect" even mentioning gender identity discrimination.  *See* 5 U.S.C. § 551(4).  There is, therefore, no binding agency statement that discrimination on the basis of sex (after the Court's Final Judgment in *Tennessee*) or discrimination on the basis of sex stereotypes includes discrimination on the basis of gender identity.  And an order vacating § 92.101(a)(2)(v) "to the extent it encompasses gender identity discrimination" would therefore accomplish nothing, even disregarding lack of any imminent enforcement.  Because an order vacating 45 C.F.R. § 92.101(a)(2)(v) "to the extent it encompasses gender-identity" discrimination, ECF No. 61 at 11 n.1, would have no effect, MCC's request for such an order does not salvage this case from mootness.[6]

---

[6] MCC's request for an injunction, ECF No. 61 at 3, violates Fifth Circuit precedent. *Franciscan All.*, 47 F.4th at 374-75 ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation.").  Moreover, the Supreme Court has held that an injunction is not "warranted" when "a less drastic remedy" including "vacatur" is sufficient. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  Again, the Court has already vacated the relevant agency statement that discrimination on the basis of sex includes discrimination on the basis of gender identity.

C. **Especially Given the President's Executive Orders, Any Claim for Relief Against 45 C.F.R. § 92.101(a)(2)(v) Is Independently Moot for Lack of Imminent Enforcement Based on MCC's Conduct.**

Even if the operative complaint included a claim for relief from 45 C.F.R. § 92.101(a)(2)(v), any such claim would not be embedded in any Article III controversy between adverse litigants. To grant MCC pre-enforcement relief from § 92.101(a)(2)(v) would require imminent enforcement of that provision by HHS based on MCC's conduct. The Fifth Circuit recently reaffirmed these principles in essentially the same context. *Neese v. Becerra*, 123 F.4th 751, 753 (5th Cir. 2024), *cert. denied sub nom. Neese v. Kennedy*, 146 S. Ct. 104 (2025). Although *Neese* addresses pre-enforcement *standing* to seek relief—including vacatur—of an agency statement, mootness is the "doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Env't Conservation Org. v. Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).

President Trump's Executive Orders, which guide HHS enforcement discretion, make clear that MCC faces no imminent enforcement of § 92.101(a)(2)(v) based on its alleged conduct. For example, in January 2025, the President signed an Executive Order titled "Protecting Children from Chemical and Surgical Mutilation." Exec. Order No. 14,187, 90 Fed. Reg. 8,771 (Jan. 28, 2025) ("*Protecting Children EO*"). The *Protecting Children EO* provides that the "Secretary of HHS shall, consistent with applicable law, take all appropriate actions to end the chemical and surgical mutilation of children," including those involving "section 1557 of the Patient Protection and Affordable Care Act." *Id*. at 8,772. The *Protecting Children EO* explains that the phrase "'chemical and surgical mutilation' . . . sometimes is referred to as 'gender affirming care.'" *Id*. at 8771. The *Protecting Children EO* defines the term to include

> the use of puberty blockers . . . and other interventions, to delay the onset or progression of normally timed puberty in an individual who does not identity as his or her sex; the use of sex hormones, such as androgen blockers, estrogen, progesterone, or testosterone, to align an individual's physical appearance with an identity that differs from his or her sex; and surgical procedures that attempt to

transform an individual's physical appearance to align with an identity that differs from his or her sex or that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions.

*Id*.

Another Executive Order, titled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," provides that it "is the policy of the United States to recognize two sexes, male and female" and that "[t]hese sexes are not changeable and are grounded in fundamental and incontrovertible reality." Exec. Order No. 14,168, 90 Fed. Reg. 8,615 (Jan. 20, 2025) ("*Defending Women EO*"). Under the Executive Order, the Executive Branch, including Defendants, "will enforce all sex-protective laws to promote this reality[.]" *Id*. "Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes." *Id*. The *Defending Women EO* also provides that it "is legally untenable" to "require[] gender identity-based access to single-sex spaces under" antidiscrimination statutes including, "for example, Title IX of the Educational Amendments Act." *Id*. at 8,616.

Especially in light of the *Protecting Children EO*, there is no serious indication that HHS views MCC's refusal to provide puberty blockers or sex hormones to children for gender transition purposes as impermissible sex stereotyping discrimination. *See Neese*, 123 F.4th at 753; *see also Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1, 5 (D.C. Cir. 2017) (no pre-enforcement jurisdiction where plaintiff's "general descriptions of [its] activities" were not viewed by Government as impermissible). Executive Branch policy is clear: the "Secretary of HHS shall, consistent with applicable law, take all appropriate actions to end the chemical and surgical mutilation of children," including those involving "section 1557" of the ACA. *Protecting Children EO* at 8,772. Given that Executive directive, it is implausible that HHS will imminently enforce Section 1557 or Part 92 based on MCC's policy of not performing such procedures on children. *See Neese*, 123 F.4th at 753; *see also* Fed. R. Civ. P. 25(d) advisory committee's note to 1961 amendment (explaining how mootness may occur when a successor in office "does not intend to

pursue the policy of his predecessor which gave rise to the lawsuit"). Rather, HHS is committed to enforcing Section 1557's prohibition on discrimination on the basis of sex stereotypes consistently with the President's Executive Orders and well-established caselaw providing that Title IX encompasses discrimination on the basis of sex stereotypes. *See, e.g., Penderson v. La. State Univ.*, 213 F.3d 858, 880-81 (5th Cir. 2000).

Many Fifth Circuit judges have acknowledged as much when they noted that challenges to the agency's Section 1557 regulations issued during the Biden Administration may not "matter . . . in light of" the executive actions "already taken by the new Administration." *Neese v. Becerra*, 127 F.4th 601, 602 (5th Cir. 2025) (Duncan, J., joined by six others, concurring). And another district court that had presided over another challenge to the regulations at issue in this case based on similar concerns over puberty blockers and sex hormones dismissed the case as moot in a docket entry after the relevant Executive Orders clarified that this type of conduct would present no basis for enforcement actions. *Florida v. HHS*, No. 8:24-cv-01080 (M.D. Fla. June 9, 2025), ECF No. 79 ("The Clerk will dismiss this case without prejudice as moot and not capable of repetition within any reasonable time frame."), *appeal pending*, No. 25-12095 (11th Cir.).

Insofar as MCC is arguing that the President's Executive Orders do not discipline HHS enforcement of Title 45 Part 92, it is mistaken. ECF No. 61 at 10 (complaining that the agency statement that discrimination on the basis of sex includes discrimination on the basis of sex stereotyping "cannot be negated by an Executive Order"). Even if the regulations included a binding agency statement that provision of puberty blockers or hormones to children is required (which they do not), the President has absolute discretion to control enforcement by Executive Branch enforcement officers.[7]  Any HHS administrative proceeding to suspend or terminate

---

[7] *See United States v. Texas*, 599 U.S. 670, 679 (2023) (discussing Executive Branch's absolute discretion to make prosecution decisions); *Alden v. Maine*, 527 U.S. 706, 756 (1999) (describing how actions "brought by the United States itself require the exercise of political responsibility," which is a "control"); *In re Aiken Cnty.*, 725 F.3d 255, 264 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he President's prosecutorial discretion . . . operate[s] as an independent

Federal funding would have to be initiated by an Executive Branch officer, subject to Executive Branch policy outlined in the President's Executive Orders. *See* 45 C.F.R. § 80.7(c)-(d) (complainants may not initiate funding termination proceedings (incorporated by 45 C.F.R. § 92.303(a))); 45 C.F.R. § 92.303(c)).[8]

Of course, the regulations include no binding statement that discrimination on the basis of sex stereotypes includes discrimination on the basis of gender identity—let alone that MCC's conduct is forbidden. MCC complains that Defendants took such a position in the *preamble*. ECF No. 61 at 9 (citing preamble statements). But those preamble statements did not say that MCC was required to provide puberty blockers or sex hormones to children because discrimination on the basis of sex includes discrimination on the basis of sex stereotypes. And, in any event, only agency statements in the regulations themselves have legal effect. 44 U.S.C. § 1510; *Brock*, 796 F.2d at 539. Statements in the preamble do not bind even HHS hearing examiners, let alone enforcement officials, the latter of which are undoubtedly bound by the President's enforcement directives. *See supra* at pp. 6 n.5, 10-11 & 10 n.7; *infra* at pp. 17-18. And the Complaint does not adequately present any claim seeking to hold unlawful or set aside any preamble statements. *See supra* at pp. 3-5; *infra* at pp. 16-18.

In all events, the Complaint never plausibly alleged any of the other factors that would be required to show pre-enforcement standing to challenge § 92.101(a)(2)(v), as considered by the Fifth Circuit in *Neese*. *See* 123 F.4th at 753. The Fifth Circuit considered the following factors in determining whether the physician-plaintiffs had pre-enforcement standing to challenge the agency's statement that discrimination on the basis of sex includes discrimination on the basis of

---

protection for individual citizens against the enforcement of oppressive laws[.]"); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965); *see also California v. Texas*, 593 U.S. 659, 669 (2021) (no pre-enforcement standing to challenge a statutory provision that is not being enforced by executive branch defendants).

[8] Defendants refer the Court to earlier briefing providing background on the mechanics of HHS administrative enforcement. ECF No. 41 at 2-3.

gender identity: (1) whether the plaintiffs themselves "view their conduct as [impermissible] gender-identity discrimination," (2) whether HHS views it as such, (3) whether the plaintiffs have "valid, non-discriminatory reasons for their medical practices," (4) whether their medical practices have "been chilled or otherwise affected" by the agency statement, and (5) whether there is evidence that "an enforcement proceeding is imminent." *Id*.

First, MCC never alleged that it viewed its conduct as prohibited discrimination—sex stereotyping discrimination or otherwise. *See id*. at 753. Rather, the President of MCC, Michael Artigues, testifies that the "clinic cares for all patients with respect, and without unlawful discrimination." Decl. of Michael Artigues, M.D. ¶ 9, ECF No. 1-2.

Second, MCC never plausibly alleged that it has no "valid, nondiscriminatory reasons" for its policies. *See Neese*, 123 F.4th at 753. Under longstanding antidiscrimination law principles, a covered entity may maintain or adopt a policy or practice for valid nondiscriminatory reasons,[9] and thus the presence of a valid nondiscriminatory reason for a policy indicates no material risk of imminent enforcement of an antidiscrimination provision. *See id*. Here, the President of MCC contends that the clinic "opposes referring patients for puberty blockers or sex hormones for 'gender transition' purposes" "[b]ased on medical judgment[.]" Artigues Decl. ¶ 26. Because "medical judgment" is not a prohibited ground under Section 1557—*i.e.* race, color, national origin, sex, age, or disability—the presence of that nondiscriminatory justification weighs forcefully against a finding that MCC's conduct is likely to result in imminent HHS enforcement of Section 1557's bar on sex stereotyping discrimination.

Third, MCC never plausibly alleged that HHS's view—now codified at 45 C.F.R. § 92.101(a)(2)(v)—that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes has "chilled or otherwise affected" MCC's conduct. *Neese*, 123 F.4th at 753. That

---

[9] *See Klocke v. Univ. of Tex.*, 938 F.3d 204, 211 (5th Cir. 2019) (applying "reasonable and non-discriminatory reasons" test to resolve Title IX sexual orientation-related "gender bias" claim); *Pederson*, 213 F.3d at 881 (applying "legitimate, nondiscriminatory explanation" test to resolve Title IX sex stereotyping claim).

is especially so given that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) (citation omitted). MCC does not allege that it is performing or referring for "gender transition" procedures due to the mere presence of 45 C.F.R. § 92.101(a)(2)(v) being on the books. Rather, the Complaint indicates that MCC has practiced according to its medical judgment for many years without any interruption by Defendants.

Finally, no "enforcement proceeding is imminent" or was imminent at the outset of the litigation. *Neese*, 123 F.4th at 753. Contrast MCC's alleged fears with, for example, entities covered by Title IX who have received a threat of enforcement. On February 21, 2025, the HHS Office for Civil Rights notified the State of Maine of a compliance review based on Maine's policy of allowing "transgender athletes to compete in women's sports." Ex. 1, HHS, OCR, Notice of Compliance Review (OCR Transaction Number DO-25-610531-RV-CRR State of Maine) (Feb. 21, 2025), at 1. Later, HHS followed up with a Notice of Determination and a proposed Voluntary Resolution Agreement. Ex. 2, HHS, OCR, Notice of Determination (OCR Transaction Number: DO-25-610531-RV-CRR State of Maine); Ex. 3, at 6. MCC fails to show that it has ever received a similar request for voluntary compliance by any of the Defendants in this case, including predecessors in office, regarding any of its policies, based on allegations of putative sex stereotyping or otherwise. The absence of any such request for voluntary compliance means that, under the relevant statutes,[10] no enforcement proceeding is imminent and demonstrates that this case is distinguishable from those where a plaintiff proffers factual allegations that support

---

[10] The statute requires HHS to advise the covered entity of a potential violation and to make a good faith effort to come to a voluntary resolution before initiating formal enforcement proceedings. 42 U.S.C. § 2000d-1 (Title VI); 20 U.S.C. § 1682 (Title IX); 42 U.S.C. § 18116(a) (Section 1557, incorporating "enforcement mechanisms provided for and available under" Title VI and Title IX); 45 C.F.R. § 92.303(a) (Section 1557, incorporating by reference 45 C.F.R. § 80.8 (Title VI)).

concrete threats of enforcement. *See Clapper*, 568 U.S. at 419-20; *Am. College of Pediatricians v. Becerra*, No. 1:21-cv-195, 2022 WL 17084365, at *15 (E.D. Tenn. Nov. 18, 2022).

For all these reasons, any further proceedings regarding § 92.101(a)(2)(v) would result in nothing more than an advisory opinion because any relief would in no way affect the imminent "behavior of the defendant[s] toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (citation omitted). This putative claim, therefore, does not enliven this case.[11]

## II.    MCC's Amorphous First Amendment Claim Does Not Save this Case from Mootness.

MCC's amorphous First Amendment claim does not save this case from mootness. First, MCC intentionally abandoned its First Amendment claims earlier in this litigation. Second, the Complaint fails to adequately present this claim because it fails to provide Defendants with any notice whatsoever of the provisions of HHS regulations that the claim challenges. Third, the relief requested in the Complaint on this issue would be ineffective because MCC is not required to notify its patients or the government that it does not discriminate on the basis of termination of pregnancy. Finally, MCC has not established imminent enforcement of any provision of 45 C.F.R. Part 92 based on its decision not to perform, promote, or affirm the legitimacy of abortion.

### A.    MCC Intentionally Abandoned This Claim.

MCC may not argue that this case remains live based on the First Amendment claim referenced in paragraph 283 of the Complaint because MCC abandoned that claim earlier in this case. On August 15, 2024, MCC filed a motion for partial summary judgment. ECF No. 27. MCC did not seek summary judgment on the claim referenced in paragraph 283 of the Complaint. *Id*. On August 23, 2024, Defendants moved to stay briefing on that motion arguing, among other

---

[11] Insofar as MCC suggests that this case remains live because of threatened enforcement against MCC by third parties, any such argument would miss the mark. In a private suit against MCC, parties may invoke whatever agency statements about Section 1557 they think may persuade a court—even those that have been superseded or are subject to a vacatur order—based on their "power to persuade[.]" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (citation omitted). But HHS's interpretive statements do not bind courts, even if codified in regulations. *See id*. (interpretive rules "lack[] power to control" courts) (citation omitted). *See Haaland v. Brackeen*, 599 U.S. 255, 293-94 (2023).

things, that a motion for partial summary judgment is procedurally improper in an APA case. ECF No. 29 at 10-11. Defendants argued that they should not be required to respond until Plaintiff filed a normal motion for summary judgment for an APA case, in which Plaintiff sought judgment on all its claims. *Id.* In response, MCC intentionally abandoned the claims that it did not raise in its motion for partial summary judgment. ECF No. 31. Specifically, MCC stated that Defendants "assert the generic claim that litigation should not be piecemeal. MCC agrees: once its motion is granted this case will not be piecemeal, it will be all but resolved," meaning that MCC was not pressing claims for relief beyond that which it sought in its partial summary judgment motion. *Id.* at 5. Thus, MCC abandoned the claims not raised in support of its motion for partial summary judgment, which includes no First Amendment claims and no request for relief related to a purported requirement that MCC tell patients or the government that it does not discriminate on the basis of termination of pregnancy.

If that were not enough, MCC independently forfeited this claim by failing to press it in opposition to Defendants' motion to dismiss the Complaint in its entirety on standing grounds. On September 30, 2024, Defendants moved to dismiss this action in its entirety on standing grounds. ECF No. 36. In doing so, MCC was obligated in its opposition to satisfy its "burden of establishing standing[.]" *Carney v. Adams*, 592 U.S. 53, 59 (2020). That meant that MCC was required to "demonstrate all the elements of standing for each provision" of the "administrative code" that it "seek[s] to challenge" in this case. *In re Gee*, 941 F.3d at 162 n.4. But MCC's opposition never even mentioned, let alone demonstrated all the elements of standing to challenge, any of the provisions that it now identifies in its response to the Court's order to show cause. ECF No. 61 at 6-8; ECF No. 38. That decision was consistent with MCC's earlier representation that it was not going to press claims other than those identified in its motion for partial summary judgment. ECF No. 31 at 5. MCC thus may not now seek to resurrect a First Amendment claim to save this case from mootness.

15

**B**    **The Complaint Fails to Adequately Present any Putative First Amendment Challenge to Any Specific Provision of 45 C.F.R. Part 92.**

No First Amendment claim for relief against any HHS regulation is properly before the Court because the Complaint fails to adequately notify Defendants of what provision or provisions of those regulations MCC is challenging. Again, courts "decline to revive [a moot] case by reading into [a plaintiff's] complaint an argument not adequately presented." *See Larsen*, 525 F.3d at 5.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide "a short and plain statement of the claim" and the "grounds for the court's jurisdiction." "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). The Fifth Circuit has made clear that a claim for relief against agency regulations must be limited to the specific provisions that the plaintiff "*actually challenges*." *Career Colleges*, 98 F.4th at 255. Moreover, to plead standing to challenge a regulation, a plaintiff must plausibly allege "all the elements of standing for each [separate] provision" of the "administrative code" that they "seek to challenge[.]" *In re Gee*, 941 F.3d at n.4. To state a pre-enforcement First Amendment challenge against a specific provision of a legal code, a plaintiff would have to plausibly allege that "a substantial number of [its] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citation omitted). To analyze the claim, the Court must first assess the particular challenged provision's "scope." *Id*. at 724. The Court must explore a provision's "full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id*. at 726. These requirements mean that a plaintiff must identify and provide notice to the defendant in the Complaint of the particular provision of a regulation it is seeking to challenge.

Unlike MCC's putative sex stereotyping challenge—which has no basis in the counts of the Complaint at all—count two at least gestures toward some "claim as to the rule's notice of nondiscrimination requirements with respect to the rule's category of 'termination of pregnancy'

discrimination."  Compl. ¶ 283.  But as this Court correctly explained, no provision of Part 92 "requires a notice of nondiscrimination based on termination of pregnancy."  ECF No. 60 at 2 n.1.

In response to the Court's show cause order, MCC states that it "does not want to *speak* by telling patients, employees, or the federal government that it is complying with a rule prohibiting discrimination on the basis of 'termination of pregnancy.'"  ECF No. 61 at 6.  But MCC's brief does not identify anything in the Complaint that provides defendants with notice of the specific provision or provisions of 45 C.F.R. Part 92 that it seeks to challenge on First Amendment grounds. And MCC cannot amend or supplement the pleading in its briefing.

Defendants are prejudiced by MCC's failure to adequately present any First Amendment challenge to a specific provision of the regulations it purportedly challenges in this case.  For example, had MCC filed a Complaint providing notice of a claim challenging the prior administration's statement *only in the preamble* that discrimination on the basis of sex includes discrimination on the basis of termination of pregnancy, ECF No. 61 at 3 (citing 89 Fed. Reg. 37,522, 37,556 (May 6, 2024)), Defendants would have moved to dismiss such a claim for lack of a reviewable final agency action.  An agency statement is not reviewable unless it is one by which rights or obligations have been determined or from which legal consequences will flow.  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Even though "[n]umerous commenters" urged HHS to provide in binding regulations a statement "that 'pregnancy or related conditions' includes termination of pregnancy," 89 Fed. Reg. at 37,576, HHS deliberately declined to do so.  The agency deliberately "decline[d] to revise the language of § 92.101(a)(2) to include" discrimination on the basis of "termination of pregnancy[.]"  *Id*.  "By treating the" language in the preamble as a binding "regulation, [MCC] render[s] this considered distinction useless, and plainly frustrate[s] the Secretary's intent."  *See Brock*, 796 F.2d at 539.  Policy statements that the prior administration did not include in the Code of Federal Regulations are binding on no one and thus not reviewable agency action.  *See id*.; *see also Racing Enthusiasts & Suppliers Coalition v. EPA*, 45 F.4th 353, 359 (D.C. Cir. 2022) (explaining that a preamble statement that reads "like an explanation of an

administrative retreat by an agency that *declined* to adopt a rule that *would* have independent legal force" is not reviewable agency action).

**C.    MCC Fails to Explain How its Requested Relief Would Effectively Redress Its Putative Injury.**

Even if the operative complaint had raised the First Amendment claim MCC now raises in its response to the show cause order, that claim is moot because the relief requested in the complaint would not redress MCC's putative First Amendment injury.  One way mootness occurs is if "effectual relief" is "impossible[.]"  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).  The only specific relief MCC requests in this area is a permanent injunction precluding Defendants from requiring that "MCC provide notices to its patients that it does not discriminate on the basis of . . . termination of pregnancy."  Compl., Prayer for Relief (C).  But as the Court already acknowledged and MCC does not dispute, the regulations do not require MCC to provide a notice to its patients stating that it does not discriminate on the basis of termination of pregnancy. Nor would vacating a preamble statement have any real-world impact because preamble statements here are already nonbinding.  *See supra* at pp. 6-7, 17-18.

**D.    Especially Given the President's Executive Orders, MCC's First Amendment Claim Is Independently Moot for Lack of Imminent Enforcement Based on MCC's Conduct.**

Any First Amendment claim for relief from some provision of Part 92 based on MCC's conduct in not promoting or affirming the legitimacy of abortion, ECF No. 61 at 7, would not be embedded in any Article III controversy between adverse litigants.  Again, to grant MCC pre-enforcement relief from any provision of Part 92 would require imminent enforcement of that provision by HHS based on MCC's conduct.  *Supra* at pp. 8-14.

President Trump's Executive Orders, which guide HHS enforcement discretion, make clear that MCC faces no imminent enforcement of Part 92 based on its decision not to "promot[e] or affirm[] the legitimacy of abortion."  ECF No. 61 at 7.  On January 24, 2025, the President signed an Executive Order titled "Enforcing the Hyde Amendment."  Exec. Order No. 14,182, 90 Fed.

Reg. 8,751 (Jan. 24, 2025) ("*Hyde Amendment EO*").  Under the *Hyde Amendment EO*, it "is the policy of the United States, consistent with the Hyde Amendment, to end the forced use of Federal taxpayer dollars to fund or promote elective abortion."  *Id*.  HHS is thus restrained from enforcing Part 92, which governs certain recipients of Federal financial assistance, in a manner that would consider MCC's policy of not promoting or affirming the legitimacy of abortion as a violation. *Neese*, 123 F.4th at 753.

Even before the change in presidential administrations, HHS could not have been clearer that it does not view this kind of conduct as prohibited.  HHS indicated in the rule's preamble that it "takes seriously concerns about, and is fully committed to upholding, the First Amendment, and nothing in these regulations restricts conduct protected by the First Amendment."  89 Fed. Reg. at 37,596.  And it noted that the regulations nowhere ban physicians from "refusing to participate in pregnancy termination procedures."  89 Fed. Reg. at 37,527-28.  In opposing MCC's motion for a preliminary injunction, Defendants explained that nothing in Part 92 restrains MCC from making the statements it wants to make regarding abortion.  It may state in its notice of nondiscrimination or elsewhere that it does not promote or affirm the legitimacy of abortions.  *See* ECF No. 18 at 21-22 ("MCC's message is that it does not perform, refer for, facilitate, or affirm abortion (as opposed to refusing to treat patients because they are pregnant or because they have, in the past, had an abortion). . . . MCC is free to convey [as much] both outside" the notice or on the required notice itself.).  MCC thus never established pre-enforcement standing to raise this claim in the first place. *See Neese*, 123 F.4th at 753; *supra* at pp. 8-14.

### III.    Defendants Are Entitled to Judgment on any Putative Pre-Enforcement Challenge to 45 C.F.R. § 92.101(a)(2)(v) and any Putative Pre-Enforcement First Amendment Challenge.

Insofar as the Court concludes that a live controversy between adverse parties exists with respect to MCC's purported challenge to 45 C.F.R. § 92.101(a)(2)(v) or its First Amendment claim, the Court should consider ordering MCC to show cause why the Court should not enter judgment for Defendants on these putative claims.  "[D]istrict courts are widely acknowledged to

possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). *See* 10A Wright & Miller's Federal Practice & Procedure § 2720.1 (4th ed. 2025 update). Any putative facial pre-enforcement challenge to 45 C.F.R. § 92.101(a)(2)(v) would fail. The same is true for any putative facial pre-enforcement First Amendment challenge to the agency statement that discrimination on the basis of sex includes discrimination on the basis of pregnancy or related conditions, 45 C.F.R. § 92.101(a)(2)(ii), or the notice of nondiscrimination provision, 45 C.F.R. § 92.10(a)(1)(i).

Parties can challenge regulations in several ways. Those include a facial challenge (*i.e.* a pre-enforcement claim that the regulation is invalid on its face) or an as-applied challenge (*i.e.*, defending against an enforcement action on the grounds that the applicable regulation is invalid in its application). *Corner Post*, 603 U.S. at 816, 823-24; *Reno v. Flores*, 507 U.S. 292, 300-01 (1993) (explaining that a case involving "only the regulation itself and the statement of basis and purpose [*i.e.* preamble] that accompanied its promulgation" is "a facial challenge"); *Dunn-McCampbell Royalty Int.*, 112 F.3d at 1288; *Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir. 1985). Any challenge that MCC brings against any provision would have to be a facial challenge because MCC's claims do not arise in the context of judicial review of any HHS action applying the regulation to MCC's particular circumstances. *See Reno*, 507 U.S. at 300-01; *Dunn-McCampbell Royalty Int.*, 112 F.3d at 1288; *Texas*, 749 F.2d at 1146.

Insofar as MCC contends that it is bringing an as-applied challenge to any provision of Part 92, it would be mistaken. As the Supreme Court explained in *Reno*, to bring an as-applied challenge to a regulation, the regulation must have first "been applied in a particular instance" by the agency. 507 U.S. at 300. When a court has no agency action and administrative record before it "interpret[ing] the regulation" further, and instead has "only the regulation itself and the statement of basis and purpose that accompanied its promulgation," the claim is "a facial challenge" under which the plaintiff "'must establish that no set of circumstances exists under which the [regulation] would be valid.'" *Id*. at 300-01 (quoting *United States v. Salerno*, 481 U.S.

739, 745 (1987)).  The Fifth Circuit has reiterated these principles, explaining that "[i]t is a tautology that [a plaintiff] may not challenge . . . regulations as applied until the [agency] applies the regulations to the [plaintiff]."  *Dunn-McCampbell Royalty Int.*, 112 F.3d at 1288; *see also Corner Post*, 603 U.S. at 816 (explaining that "'as-applied' challenges" are those involving agency "orders adjudicating a party's own rights").  MCC does not allege that there has been any agency action applying Part 92 to MCC's conduct or to any conduct.

### A.  MCC's Putative Facial Challenge to 45 C.F.R. § 92.101(a)(2)(v) Fails.

Any facial challenge to § 92.101(a)(2)(v) fails.  In a facial challenge like MCC's, the plaintiff "must establish that no set of circumstances exists under which the [rule] would be valid." *Associated Builders & Contractors of Tex., Inc. v. NLRB*, 826 F.3d 215, 220 (5th Cir. 2016) (quoting *Carmouche*, 449 F.3d at 662); *see also Reno*, 507 U.S. at 301.  "That means that to prevail, the Government need only demonstrate that [the rule] is [valid] in some of its applications."  *United States v. Rahimi*, 602 U.S. 680, 693 (2024), *remanded*, 117 F.4th 331 (5th Cir. 2024).  The Court must "consider the circumstances in which" the challenged provision is "most likely" to be valid. *Id*. at 701.  "[F]acial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law [or regulation] works in all of its applications."  *Moody*, 603 U.S. at 744.

Defendants are entitled to judgment on any facial challenge to the agency statement designed to interpret Section 1557 codified at 45 C.F.R. § 92.101(a)(2)(v).  The Fifth Circuit has confirmed that Title IX includes discrimination on the basis of sex stereotypes.  In *Penderson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000), the Fifth Circuit held that if a covered entity decides to treat individuals differently "because of paternalism and stereotypical assumptions about their interests and abilities, that [entity] intend[s] to treat women differently because of their sex" in violation of Title IX, with sufficient intent to raise a claim for monetary damages.  *Id*. at 880.  The *Penderson* court also held that "because classifications based on 'archaic' assumptions are facially discriminatory, actions resulting from an application of these

21

attitudes constitute intentional discrimination" making out a Title IX damages claim. *Id*. at 881. *See also id*. ("LSU perpetuated antiquated stereotypes and fashioned a grossly discriminatory athletics system in many other ways.").

Section 92.101(a)(2)(v) is thus a correct statement of law interpreting Section 1557 as applied to many fact patterns. Indeed, the Fifth Circuit has held that Title IX precludes discrimination when "sex was a motivating factor in a" challenged decision. *Doe v. William Marsh Rice Univ.*, 67 F.4th 702, 709 (5th Cir. 2023) (citation omitted). And an individual's immutable biological classification as either male or female is undoubtedly a motivating factor in many if not all instances where a covered entity discriminates on the basis of sex stereotypes, considering "the full scope of" § 92.101(a)(2)(v)'s "coverage." *See Moody*, 603 U.S. at 744. The Court must therefore "uphold the provision and preserve the right of complainants to bring as-applied challenges against any alleged unlawful applications." *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, 964 F.3d 1177, 1185 (D.C. Cir. 2020) (citation omitted). *See also Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1244 (10th Cir. 2011) (Gorsuch, J.) (explaining that a plaintiff cannot meet its burden in bringing a facial challenge to a regulation when "it's just not the case that *every time* the [agency enforces the provision] it exceeds its statutory authority").

### B. MCC's Putative First Amendment Facial Pre-Enforcement Challenge to 45 C.F.R. §§ 92.101(a)(2)(ii) or 92.10(a)(1)(i) Fails.

Any facial challenge to § 92.101(a)(2)(ii) or the notice provision at § 92.10(a)(1)(i) on First Amendment grounds also fails. As for § 92.101(a)(2)(ii), in First Amendment cases, "[t]he question is whether 'a substantial number of [that provision's] applications are unconstitutional, judged in relation to the [its] plainly legitimate sweep.'" *Moody*, 603 U.S. at 723 (quoting *Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). The provision may only be struck down if its "unconstitutional applications substantially outweigh its constitutional ones." *Id*.

Section 92.101(a)(2)(ii) has an overwhelming number of legitimate applications that MCC does not take issue with and do not implicate protected speech. Consider *Conley v. Nw. Fla. State*

*College*, 145 F. Supp. 3d 1073 (N.D. Fla. 2015).  In that case, the district court explained how "Congress specifically envisaged that its prohibition of sex discrimination [in Title IX] would encompass pregnancy discrimination."  *Id*. at 1077.  The Court referred to many applications in the education context that were discussed in the legislative history of Title IX that have nothing to do with termination of pregnancy, let alone implicate protected speech.  *Id*.  In *Conley* itself, the plaintiff stated a Title IX claim after being expelled from a medical school clinical program because she was pregnant.  *Id*. at 1075.

In the health care context, a federally funded health care provider's decision to deny a woman medical care—or make it more difficult for a woman to obtain care—such as for a broken bone or a sore throat, merely because of her pregnancy, would violate Section 1557 consistent with the agency statement that discrimination on the basis of sex includes discrimination on the basis of pregnancy or related conditions codified at § 92.101(a)(2)(ii).[12]  Those applications do not implicate protected speech in any way.  The Court could imagine any number of similar plausible applications that have nothing to do with protected speech.  Defendants are thus entitled to judgment on any putative pre-enforcement facial First Amendment challenge to § 92.101(a)(2)(ii).  Indeed, the Supreme Court has held that a plaintiff may not bring a pre-enforcement First Amendment challenge to an antidiscrimination provision that itself "does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the [provision] on the basis of such constitutionality impermissible criteria."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623-24 (1984).  If, as is the case here, a plaintiff cannot show that the provision "has been applied [by the enforcement officer] in this case for the purpose of hampering the organization's ability to express its views[,]" then the claim must fail.  *Id*. at 624.  Again, MCC makes no such showing—

---

[12]  Doing so would not violate Section 1557 if the medical provider had a legitimate nondiscriminatory reason for its conduct.  *See supra* at p. 12 n.9.

the Court has "only the regulation itself and the statement of basis and purpose that accompanied its promulgation." *Reno*, 507 U.S. at 301.

Moreover, Defendants would be entitled to judgment on any putative facial challenge to the notice of nondiscrimination provision codified at 45 C.F.R. § 92.10(a)(1)(i). That provision does not require MCC to make any statement about discrimination on the basis of termination of pregnancy or—especially given the Final Judgment in *Tennessee*—gender identity. Again, under the provision, MCC may publicize its message that it does not promote, perform, refer for, facilitate, or affirm the legitimacy of abortion both outside the notice or on the required notice itself. *See supra* at p. 19. Section 92.10(a)(1)(i) satisfies the standard of First Amendment scrutiny that governs disclosure requirements for the reasons described in Defendants' opposition to MCC's motion for a preliminary injunction. ECF No. 18 at 20-23.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action without prejudice as moot.

Dated: January 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 514-4964
Fax: (202) 616-8470
Email: Liam.C.Holland@usdoj.gov

*Counsel for Defendants*