IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**McCOMB CHILDREN'S**
**CLINIC, LTD., a Mississippi**
**Corporation**                                                                **PLAINTIFF**

**v.**                                                     **CAUSE NO. 5:24CV48-LG-ASH**

**ROBERT F. KENNEDY, JR.,**
**in his official capacity as**
**Secretary of the United States**
**Department of Health and Human**
**Services, et al.**                                                     **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER LIFTING STAY AND**
**DISMISSING CASE PURSUANT TO MOOTNESS DOCTRINE**

In this lawsuit, Plaintiff McComb Children's Clinic ("MCC") challenges portions of the Department of Health and Human Services' May 6, 2024, Final Rule, which purportedly implemented regulations prohibiting healthcare discrimination under the Affordable Care Act ("ACA").  *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522-01 (May 6, 2024); 42 U.S.C. § 18116.  The Rule amended 42 C.F.R. parts 438, 440, 457, and 460 and 45 C.F.R. parts 80, 84, 92, 147, 155, and 156.  MCC has filed a [7] Motion for Preliminary Injunction and a [27] Motion for Partial Summary Judgment, and Defendants have filed a [35] Motion to Dismiss.

The Court stayed this lawsuit on March 31, 2025, in as much as MCC was protected by a nationwide injunction entered by this Court in a similar case.  *See Tennessee v. Becerra*, 739 F. Supp. 3d 467 (S.D. Miss. 2024).  The Court later entered summary judgment in favor of the plaintiffs in that same case.  *See*

*Tennessee v. Kennedy*, No. 1:24cv161-LG-BWR, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025).

No appeal was filed in the *Tennessee* case. Therefore, the Court ordered the parties here to show cause why this lawsuit has not been mooted by the binding vacatur entered in the *Tennessee* case. Order [60]. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the stay of this matter should be lifted, and that this lawsuit should be dismissed as is moot.

## BACKGROUND

In its [1] Complaint, MCC brought an Administrative Procedure Act ("APA") claim to set aside agency action. Claims include: First Amendment free speech, association, and assembly claims, a Fifth Amendment takings claim, and a claim based on "Structural Principles of Federalism and Lack of Enumerated Powers." Compl. [1] at 40. The Complaint as also alludes to 42 U.S.C. § 238n and 42 U.S.C. § 18023 in its request for relief, but it did not address these statutes elsewhere in the Complaint.[1]

MCC asked the Court to "declare unlawful, set aside, and vacate the rule to the extent it prohibits discrimination on the basis of gender identity." *Id.* at 43. It

---

[1] MCC has abandoned the following claims because it has not mentioned these alleged claims in any of its motions, responses, or briefs, including its response to the Court's [60] Order to Show Cause: its Fifth Amendment claim, its assembly claim, its association claim, its "Structural Principles of Federalism and Lack of Enumerated Powers" claim, and any claim concerning 42 U.S.C. § 238n and 42 U.S.C. § 18023.

also sought a "preliminary and permanent injunction against Defendants implementing, enforcing, or applying a gender-identity nondiscrimination mandate under any aspect of the rule . . . ." *Id.* And it asked the Court to preliminarily and permanently enjoin

> Defendants from implementing, enforcing, or applying the rule, or Section 1557 of the ACA, in any aspect of a covered entity's expression . . . including but not limited to the requirement that MCC provide notices to its patients that it does not discriminate on the basis of gender identity or termination of pregnancy.

*Id.* at 44. Plaintiffs also requested "[t]hat this Court define such relief to encompass any language or alternative theory in the rule that Defendants may use to achieve those same ends as to gender identity." *Id.* at 45.

In the *Tennessee* case, the Court vacated the following regulations "to the extent that they expand Title IX's definition of sex discrimination to include gender-identity discrimination":

> 42 C.F.R. § 438.3(d)(4), 42 C.F.R. § 438.206(c)(2), 42 C.F.R. § 440.262, 42 C.F.R. § 460.98(b)(3), 42 C.F.R. § 460.112(a), 45 C.F.R. § 92.101(a)(2)(iv), 45 C.F.R. § 92.206(b)(1)–(4), 45 C.F.R. § 92.207(b)(3)–(5), 45 C.F.R. § 92.8(b)(1), 45 C.F.R. § 92.10(a)(1)(i), and 45 C.F.R. § 92.208.

2025 WL 2982069 at 13. The Court also entered the following declaratory judgment: "HHS exceeded its statutory authority when (1) it interpreted Title IX, as incorporated into Section 1557, to prohibit discrimination on the basis of gender identity, and (2) when it implemented Section 1557 regulations concerning gender identity and 'gender affirming care.'" *Id.*

## DISCUSSION

**THE MOOTNESS DOCTRINE**

Article III of the United States Constitution only permits federal courts to decide certain "cases" and "controversies." U.S. CONST., art. III, § 2. The mootness doctrine stems from this limitation. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

> In other words, mootness occurs only when it is impossible for the court to grant any effectual relief whatever to a prevailing party. Thus, when a complaining party manages to secure outside of litigation all the relief he might have won in it, the case is moot. But as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 142 F.4th 819, 824 (5th Cir. 2025) (citation modified); *see also Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 680 (5th Cir. 2022) ("[M]ootness results when a party receives complete relief in another judicial proceeding."). Courts must conduct mootness analysis for each claim presented in a lawsuit. *United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020).

MCC does not dispute that part of its lawsuit is now moot. However, MCC claims it is entitled to a permanent injunction in addition to the relief the Court granted in the *Tennessee* case. It also argues, "[E]ven after the Court's vacatur, MCC is not shielded from the 2024 Rule's gender identity mandate residing in the sex stereotypes provision at § 92.101(a)(2)(v)." Pl.'s Resp. to Order [61] at 6.

Finally, MCC attempts to reassert its First Amendment claim related to termination of pregnancy.

## A. SEX STEREOTYPES

MCC argues that its lawsuit is not moot because the Court did not include 45 C.F.R. § 92.101(a)(2)(v), which defines "sex discrimination" to include "sex stereotypes" in the list of regulations the Court partially vacated in the *Tennessee* case.[2] In the background section of its Complaint, MCC alleged:

> [T]he rule directly defines "gender-identity" discrimination to be sex discrimination, but the rule separately defines "sex stereotypes" discrimination to be sex discrimination, and the rule considers "sex stereotypes" discrimination to encompass gender-identity discrimination.

Compl. [1] at 11. MCC argues that it sought partial vacatur of the sex stereotypes subsection when it made the following statement in its Complaint:

> [T]o the extent this Complaint refers to, or asks the Court to issue relief concerning, the rule and Defendants' actions thereunder prohibiting discrimination on the basis of gender identity, MCC intends to encompass any language or alternative theory in the rule that Defendants may use to achieve those same ends.

*Id.* at 12. MCC also cites the Complaint's Prayer for Relief where it asked the Court "to vacate the rule to the extent it prohibits discrimination on the basis of gender identity." *Id.* at 43.

The regulation in dispute provides:

> (1) Except as provided in title I of the ACA, an individual must not, on the basis of race, color, national origin, sex, age, disability, or any combination thereof, be excluded from participation in, be denied the

---

[2] The plaintiffs in the *Tennessee* case did not present any arguments related to sex stereotypes.

> benefits of, or otherwise be subjected to discrimination under any health program or activity operated by a covered entity.
>
> (2) Discrimination on the basis of sex includes, but is not limited to, discrimination on the basis of:
> (i) Sex characteristics, including intersex traits;
> (ii) Pregnancy or related conditions;
> (iii) Sexual orientation;
> (iv) *Gender identity;* and
> (v) *Sex stereotypes.*

45 C.F.R. § 92.101(a) (emphasis added). In the Rule's preamble, Defendants explain that the phrase "sex stereotypes" was included in this provision because "more than 30 years ago, a plurality of the Supreme Court held in *Price Waterhouse* that discrimination based on sex stereotypes was a prohibited form of sex discrimination." 89 Fed. Reg. at 37574 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989)).

In the *Tennessee* case, the Court unequivocally held that Defendants violated the APA to the extent that they defined discrimination on the basis of sex to include "gender identity." It granted a universal vacatur that removed all references to "gender identity" from the pertinent regulations. Thus, the Court has already granted the relief MCC now seeks. In other words, if Defendants were to interpret § 92.101(a)'s reference to "[d]iscrimination on the basis of sex" to mean "gender identity," whether under the guise of "sex stereotypes" or otherwise, they would essentially be reinstating the "gender identity" subsection in the Rule without Notice and Comment and in violation of this Court's judgment. Since MCC has received complete relief for its APA claim, that claim is moot.

## B.     INJUNCTIVE RELIEF RELATED TO GENDER IDENTITY

MCC argues that this lawsuit is not moot to the extent it seeks injunctive relief because a permanent injunction was not awarded in the *Tennessee* case. It requests a "permanent injunction against Defendants implementing, enforcing, or applying a gender-identity nondiscrimination mandate under any aspect of the rule . . . ." Compl. [1] at 43.

"Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). Thus, "[t]he default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022). The Supreme Court has held:

> An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course. If a less drastic remedy (such as partial or complete vacatur . . . ) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010).

A vacatur "formally nullif[ies] and revoke[s]" agency action. *Data Mktg. P'ship, LP*, 45 F.4th at 859–60. In the *Tennessee* case, the Court vacated the Rule to the extent that it prohibited gender-identity discrimination. Since this universal vacatur removed the gender-identity language from the Rule, the Court sufficiently redressed the harm suffered by MCC. It would be inappropriate to issue an injunction prohibiting enforcement of the gender identity provisions in a Rule nullified by a prior court judgment. MCC's request for a permanent injunction is

moot.

## C. TERMINATION OF PREGNANCY

In support of its First Amendment claim related to termination of pregnancy, MCC alleges:

> The rule requires MCC to adopt, give notice of, and post a policy that it does not discriminate on the basis of . . . termination of pregnancy as understood by the rule. . . . MCC opposes complying with the rule's requirement . . . that it provide notice that it does not discriminate on the basis of . . . "termination of pregnancy."

*Id.* at 29. It further claims, "The rule coerces MCC's speech by forcing it to provide notices to patients that it does not discriminate on the basis of . . . 'termination of pregnancy.'" *Id.* at 39. MCC does not request a vacatur of any provision of the Rule related to pregnancy, but it seeks a preliminary and permanent injunction

> prohibiting Defendants from implementing, enforcing, or applying the rule, or Section 1557 of the ACA . . . in any aspect of a covered entity's expression, . . . including but not limited to the requirement that MCC provide notices to its patients that it does not discriminate on the basis of . . . termination of pregnancy.

*Id.* at 44. It further seeks a declaratory judgment that the Rule violates the First Amendment to this extent.

After MCC filed its Motion for Partial Summary Judgment, which did not address MCC's First Amendment claim, Defendants filed a Motion for Stay, or in the alternative, for a briefing schedule that required MCC to file a motion for summary judgment addressing all its claims. Defendants argued:

> [P]artial summary judgment . . . is not designed, as MCC seemingly contemplates, to allow for inefficient piecemeal briefing of the purely legal issues presented in an APA case. . . . In this context, multiple motions for partial summary judgment on a series of different issues

> and claims (or parts of claims) represents disfavored "piecemeal" litigation presenting a burden that outweighs any benefit.

Defs.' Mot. [29] at 10. In its Response, MCC agreed that this litigation should not be decided piecemeal, and it stated, "[O]nce its motion is granted this case will not be piecemeal, it will be all but resolved." Pl.'s Resp. [31] at 5. Later, MCC explained, "[I]n reality, the Court's [preliminary injunction] holding [in the *Tennessee* case] resolves this case." *Id.* at 6.[3] Based on MCC's representations that its Motion for Partial Summary Judgment would resolve the entire case, the Court entered a briefing schedule that only addressed the Motion for Partial Summary Judgment. *See* Order [34] at 4. MCC also did not mention its First Amendment claim when it responded to MCC's [36] Motion to Dismiss, which sought dismissal of the entire case for lack of standing.[4]

The Fifth Circuit's "well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023); *see also City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof."). Furthermore, a party abandons its claim when it does not pursue it "beyond [the] complaint." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

---

[3] The plaintiffs in the *Tennessee* case did not assert a First Amendment claim or otherwise contest any of the Rule's provisions related to pregnancy.

[4] Defendants did not address the First Amendment claim in their Motion and supporting Memorandum, presumably due to the representations made by MCC in its Response to the Motion to Stay. In response to the Motion to Dismiss, MCC did not clarify that it sought to pursue its First Amendment claim.

The Court finds that MCC abandoned its First Amendment termination of pregnancy claim. Since the Court cannot grant effectual relief for this abandoned claim, the claim is now moot.

## CONCLUSION

**IT IS THEREFORE ORDERED AND ADJUDGED** that the stay entered in this lawsuit on March 31, 2025, is lifted.

**IT IS FURTHER ORDERED AND ADJUDGED** that this lawsuit is **DISMISSED WITHOUT PREJUDICE** pursuant to the mootness doctrine. The Court will enter a separate judgment as required by Fed. R. Civ. P. 58(a).

**SO ORDERED AND ADJUDGED** this the 5th day of February, 2026.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE